[L. A. No. 26867.   In Bank.   Nov. 19, 1963.]

MARGUERITE B. LIPKA, Plaintiff and Respondent, v. LaVERN H. LIPKA, Defendant and Appellant.

474

Mantalica, Barclay & Teegarden and Lewis C. Teegarden for Defendant and Appellant.

Edward M. Raskin, Emmet G. Lavery, Jr., and Paul P. Selvin for Plaintiff and Respondent.

McCOMB, J.—Defendant appeals from an interlocutory decree of divorce granted to plaintiff, which decree awarded

the respective parties various items of their community property, provided for periodic payments to plaintiff "for her support and maintenance and ... as a further division of community property," and granted a lien as security for such payments.

*Facts*: Plaintiff's complaint alleged extreme cruelty. Defendant denied the allegations and filed a cross-complaint charging plaintiff with extreme cruelty.

*Questions*: First. *Was there sufficient evidence of cruel and grievous mental suffering to support the interlocutory decree of divorce?*

*Yes.* The following rules are here applicable:

(1) The infliction of grievous mental suffering as a ground for divorce is a question of fact, to be deduced from the circumstances of the case in light of the intelligence, refinement, and delicacy of sentiment of the complaining party. (*LaMar* v. *LaMar*, 30 Cal.2d 898, 901 [186 P.2d 678]; *Keener* v. *Keener*, 18 Cal.2d 445, 447 [1] [116 P.2d 1]; *Griffith* v. *Griffith*, 129 Cal.App.2d 803, 808 [2] [277 P.2d 850].)

(2) The sufficiency of the corroborative testimony in a divorce action lies within the sound discretion of the trial court. (*LeVanseler* v. *LeVanseler*, 206 Cal.App.2d 611, 613 [2] [24 Cal.Rptr. 206]; *Spivak* v. *Spivak*, 191 Cal.App.2d 455, 457 [2-4] [12 Cal.Rptr. 786]; *Griffith* v. *Griffith, supra,* at p. 809 [3].)

(3) When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [1] [299 P.2d 231].)

Plaintiff testified relative to cruelty and suffering, as follows: "Q. ... Is it a fact that consistently, during the course of your marriage, your husband has refused for weeks at a time to talk to you? A. Yes, he has; that is true. Q. And is it also true, Mrs. Lipka, that on occasions when you would have people at the home he would refuse to talk to your friends and acquaintances? A. If that happened to be the mood he was in, yes. Q. Was he very moody during the marriage, so as to ignore you and your friends when they were there? A. Many times he did. Q. On occasions would he start repairs in the house and then later leave them complete-

ly unfinished? A. That is correct. Q. Despite your request that he finish these repairs? A. That is true. Q. Has this course of conduct persisted, so as to cause you humiliation and embarrassment? A. Yes, sir. Q. And was it so extensive as to require medical care for yourself? A. Yes; I was very upset many times.''

As corroboration of the foregoing testimony, plaintiff's brother testified: ''Q. Have you been present on occasions when your brother-in-law, Mr. Lipka, has refused to speak to your sister for weeks at a time? A. I am not sure of the period of time, but he has gone for long, lengthy times, without speaking to her. Q. On occasions when you have been at their home, in the presence of friends and relatives, have there been occasions where Mr. Lipka chose to ignore his wife and his guests? A. Yes, sir. Q. And have there also been occasions where he has started repairs on the house and then refused to finish them, leaving open holes in the place as it stands right now? A. To clarify that, by 'refusing'—I don't know whether he refused or not, but it was left undone. Q. Has this course of conduct had a bad effect upon your sister? A. Yes. Q. Has it affected her health? A. Yes. Q. Made her unhappy and ill? A. Yes.''

It is to be noted that defendant's counsel did not question the sufficiency of the corroborating evidence in the trial court and waived cross-examination of the witnesses on the question of cruelty.

In view of the above evidence, which supports the findings of the trial court and, in turn, the interlocutory decree, no useful purpose would be served in detailing other evidence of acts of cruelty.

■ Second. *Was the interlocutory decree void insofar as it provided that periodic payments to be made thereunder to plaintiff were for support and maintenance, as well as a further division of community property, and were not to terminate on the death or remarriage of either party?*

*No.* Defendant contends that the provisions in the decree stated above violated the requirement of section 139 of the Civil Code that support and maintenance payments terminate on death or remarriage unless the parties agree to the contrary in writing. Here there was no written agreement.

By construing the provisions of the decree as a whole, however, it is clear that the periodic payments were ordered as part of the division of the community property, rather

than for the support and maintenance of plaintiff. Accordingly, no written agreement was necessary.

The decree specifically provides that the payments are to be made to plaintiff as part of the division of the community property. It reads: *"The community property of the parties is divided as follows*:

"Plaintiff is awarded as her sole and separate property:

". . . . . . . . . . . . . . .

"8. Defendant is ordered to pay to plaintiff for her support and maintenance and as full satisfaction of his marital obligation and as a further division of community property the sum of Seventy-Eight Thousand Six Hundred Fifty and No/100 ($78,650.00) Dollars payable at the rate of Six Hundred Fifty and No/100 ($650.00) Dollars per month payable for a period of one hundred twenty-one (121) months commencing on the first day of the month following the entry of this Interlocutory Judgment of Divorce. Said Payments are to be non-modifiable as to amount, or as to duration, and said payments shall not terminate upon the death of either of the parties, nor on the re-marriage of either party, and in the event of the death of plaintiff, said payments shall be made to her estate, and in the event of the death of defendant, said payments shall be a charge and obligation against his estate. . . ." (Italics added.)

In *Tuttle* v. *Tuttle*, 38 Cal.2d 419 [240 P.2d 587], we affirmed an order of the trial court denying the wife's motion to increase the amounts payable to her under a similar decree and said at page 421 [2] : ". . . the provision requiring the payment of stated amounts for a limited period is one of eight numbered paragraphs which specify in detail how 'the hereinafter designated property which is found to be community property . . . [is to be] divided and apportioned.'. . .

"There is ample evidence to support the trial court's findings in the order denying modification that the provision for payments to Lillie was a disposition of property rights and not alimony."

The fact that the monthly payments to plaintiff were to continue until a given amount had been paid, were then to cease without reference to plaintiff's needs or defendant's ability to pay after that time, and were not to terminate on the death or remarriage of either party, is, in itself, an indication that they were to be made as part of the settlement of plaintiff's community property interests. (Cf. *Dexter* v. *Dexter*, 42 Cal.2d 36, 41 [265 P.2d 873].)

■ Since plaintiff procured her divorce on the ground of extreme cruelty, the trial court could have awarded her all the community property, as well as alimony. However, even counting the entire amount of the periodic payments as part of plaintiff's share of the community property, she was awarded no more than half of the total community property.[1] This is a factor to be considered in determining the nature of such payments.

■ Where the award to the respective parties of varying items of community property creates an imbalance in equitable division, the use of a monetary award from the person receiving the greater value to the person receiving the smaller value is an acceptable and practicable method of adjusting the inequalities in the property values so awarded. (*Webster* v. *Webster*, 216 Cal. 485, 488 [1] [14 P.2d 522]; *Sullivan* v. *Sullivan*, 193 Cal.App.2d 277, 279 [2] [14 Cal. Rptr. 241].)

■ The fact that the decree may provide that such a monetary award is for the maintenance and support of the party in whose favor it is made does not render it any the less an award of a portion of the community property. (*Tuttle* v. *Tuttle, supra,* 38 Cal.2d 419, 422 [3]; *Webster* v. *Webster, supra.*)

■ The cases of *Fields* v. *Fields,* 94 Cal.App.2d 56 [209 P.2d 977], and *Bailey* v. *Bailey,* 60 Cal.App.2d 291 [140 P.2d 693], determine that payments to be made as support and maintenance and as a division of community property should not be combined in a single payment. However, defendant may not complain, because it was the action of his own trial counsel that was responsible for the insertion of the language

---

[1]Of the items valued, the court awarded plaintiff the parties' Pasadena real property, having a value of $13,000, their Big Bear property, having a value of $12,500, a promissory note, secured by a trust deed on property at Big Bear, having a value of $600, plus the sum of $78,650 as a further division of community property, making a total of $104,750. In addition, plaintiff was awarded most of the furniture and furnishings of the parties, personal effects in her possession, and a 1956 Ford automobile.

Defendant was awarded the community property business, subject to the payment of said sum of $78,650, having a gross value of $175,000, a Bankers Life policy, having a value of $5,500, and certain boats, motors, and trailers, having a value of $9,000, or a total of $110,850. He was also awarded a Metropolitan Life policy and certain shares of stock, having an unknown value, a 1957 Mercury station wagon, a 1949 Jeep, and several pieces of furniture, and he was ordered to pay plaintiff's attorney's fees.

complained of. (See *Kalmus* v. *Kalmus,* 103 Cal.App.2d 405, 426 [28, 29] [230 P.2d 57] [hearing denied by the Supreme Court].)

Plaintiff, through her counsel, announced to the trial court that she wished to waive alimony. Defendant's counsel, however, over plaintiff's objection, insisted on the inclusion of the present language dealing with both support and maintenance and division of community property, so that defendant could obtain a potential tax advantage.

Then at the conclusion of the trial the following colloquy ensued: "THE COURT: I will make the following order: . . . I will make an order for $650 a month to the wife for a period of 121 months, as support and maintenance and for her share of the community property. That will be incorporated in the decree to make it an integrated property settlement. [Plaintiff's attorney]: That is an integrated decree and that is to be non-modifiable and non-terminable upon the remarriage or death of either party? THE COURT: Yes."

Neither defendant nor his counsel objected to the foregoing statement, and thereafter defendant's counsel waived findings and approved the form of the decree.

■ Third. *Did the court err in granting plaintiff a lien upon the parcels of real property awarded to defendant to secure the payment of the $78,650 awarded to plaintiff?*

*No.* A court may secure payments to a wife made in lieu of a division of community property in kind by granting the wife a lien upon the community property awarded to the husband. (*Webster* v. *Webster, supra,* 216 Cal. 485, 488 [1]; *Meyer* v. *Meyer,* 184 Cal. 687, 689 [2] [195 P. 387].)

■ Fourth. *Did the trial court abuse its discretion in awarding additional attorney's fees in the sum of $3,500?*

*No.* At the conclusion of the trial, the trial court awarded plaintiff's attorneys additional fees in the sum of $3,500. Defendant argues here that the award of $6,500 as total attorney's fees for plaintiff was an abuse of discretion by the trial court. Defendant has appealed only from the order granting the additional fees of $3,500. No appeal was taken from the original award of attorney's fees on the order to show cause.

■ In connection with the entire attorney's fees, defendant argues that the trial court abused its discretion in awarding attorney's fees to plaintiff without the taking of evidence. This court, however, in *Peyre* v. *Peyre,* 79 Cal. 336,

339 [21 P. 838], held that no testimony was necessary to determine the amount of an attorney's fee in a divorce case, and that the trial court could determine the amount of the fee from its own experience and from the facts and circumstances of the case, as they appeared from the pleadings and other papers. (Cf. *Ryder* v. *Ryder*, 2 Cal.App.2d 426, 434 [13] [37 P.2d 1069].)

In the instant case there is an implied finding by the trial court that the total community property of the parties exceeded the sum of $215,600, and there was evidence from which the trial court could determine that defendant's annual income was in excess of $30,000 per year.

The additional attorney's fee of $3,500 (the only portion of the attorney's fee granted in the order from which defendant has appealed) is only 1.6 percent of the total community property of the parties. Viewed in this light, the total fee allowed plaintiff by the trial court, $6,500, is only 3 per cent of the total community property of the parties. It therefore appears that the fee was not excessive.

Fifth. *Did the trial court properly augment the record on appeal?*

*Yes.* Rule 8(b) of the California Rules of Court[2] provides that when any party files a request for correction of a transcript, the clerk shall within ten days set a time for certification of the transcript by the judge who tried the case and shall give not less than five days' notice to the parties, and then provides, ''At the time set or at the time to which the judge may continue the hearing, he shall determine the request for correction, and if none is allowed, shall certify the transcripts as correct.''

In the present case, plaintiff requested an augmentation of the record on appeal, and the augmentation was allowed without a hearing pursuant to rule 8(b).

The reason behind the rules for augmentation of a record is to make the record conform to the truth, so that an appellate court, in passing on the acts of a trial court, can have before it the proceedings upon which the trial court based its action. In the present case, no contention is made that the augmentation did not make the record conform to the truth.

The chief purpose of the augmentation was to make the record show that in lengthy conferences in the trial

---

[2]Formerly Rules on Appeal, rule 8(b).

judge's chambers plaintiff's attorney repeatedly stated that plaintiff wished to waive alimony and any right to support and maintenance and that the attorney representing defendant in the trial court insisted that the periodic payments be described in the proposed decree as payments for support and maintenance, as well as a division of community property, so that defendant could obtain a potential tax advantage.

These facts are set forth in an affidavit by plaintiff's counsel; and the trial judge certified, pursuant to the prayer in the affidavit, that such facts were true and correct statements relating to, and surrounding the execution of, the interlocutory decree.

Defendant was entitled to a hearing pursuant to rule 8(b), but the failure to have such a hearing was not prejudicial to him because (1) no challenge has been made as to the truth or veracity of the affidavit of plaintiff's counsel or the certification thereof by the trial judge and (2) the fact that the periodic payments were to be made as part of the settlement of plaintiff's community property interests clearly appears from the language of the decree itself.

The cases relied on by defendant, such as *Estate of Larson,* 92 Cal.App.2d 267 [206 P.2d 852], dealing with the question of the augmentation of a record, are legally and factually distinguishable from the present case.

In the *Larson* case, for example, the appellant, although limited by the procedure he followed to an appeal on the clerk's transcript alone, attempted to have transmitted to the reviewing court documents containing a portion of the oral proceedings. It was held that a motion to augment cannot be used to create a record, its function being to supplement an incomplete but existing record.

In the present case, on the other hand, both a clerk's transcript and a reporter's transcript were filed, and plaintiff was supplementing ''an incomplete but existing record'' and not attempting to ''create a record.''

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.