OLETIA MARIE ANTHONY, Plaintiff and Respondent, v. MYRON PHILIP ANTHONY, Defendant and Appellant.

Julius A. Leetham and Murray M. Chotiner for Defendant and Appellant.

Harwood, Heffernan, Soden & Carfman, Harwood, Soden & Adkinson, Launer, Chaffee & Hanna and Daniel L. Stack for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Divorce defendant Myron Philip Anthony appeals from an order after final judgment awarding plaintiff Oletia Marie Anthony $53,000 for attorneys' fees.

The Anthony property settlement agreement requires defendant to pay plaintiff's reasonable divorce and property settlement attorneys' fees. In its interlocutory divorce decree, the trial court approved the property settlement agreement, and by stipulation of the parties in the property settlement agreement, retained jurisdiction to fix fees and costs.

In substance, defendant attacks the reasonableness of the $53,000 award. Attempting to prove an abuse of discretion, as he must for reversal (*Hicks* v. *Hicks,* 249 Cal.App.2d 964, 968 [58 Cal.Rptr. 63]; *Crevolin* v. *Crevolin,* 217 Cal.App. 2d 565 [31 Cal.Rptr. 622]; *Warner* v. *Warner,* 34 Cal.2d 838 [215 P.2d 20]) defendant belittles plaintiff's attorneys' performance by stressing the small number of papers plaintiff's attorneys filed (three page complaint, two page answer to cross-complaint, memo for setting and notice of trial), the single deposition plaintiff's attorneys took, and the de facto $207.03 hourly rate calculated by dividing $53,000 by the 256 hours plaintiff's attorneys worked. These factors alone are not controlling. "Among the factors to be considered in determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding are the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded (citation); the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. (citations)." (*Berry* v. *Chaplin,* 74 Cal.App.2d 669, 679 [169 P.2d 453].)

In 1953, when the Anthonys were married, defendant's investment in his business amounted to less than $20,000.

During the marriage the business prospered, developing into Anthony Pools, Inc. At the time of property settlement negotiation, the Anthonys owned $1,900,000 book value (the market value was $2,500,000 - $3,000,000) in Anthony Pools stock, a $350,000 Newport Beach, Lido Isle home, $25,000 household furnishings, $95,000 cash and a $20,000 San Clemente lot, for a conservative total of $2,390,000, plus a house under construction on a lot in Newport Beach and a lot in Lucerne Valley, all of unknown value.

Against the $2,390,000 plus propertied background, defendant proposed plaintiff get $415,000 in property and $1,000 monthly as a property settlement. Defendant's cross-complaint denied any of the Anthony Pools stock was community property. To attack this claim, plaintiff hired attorneys whose expertise in accounting, corporate finance and community property law facilitated a thorough investigation of Anthony Pools, Inc. and defendant's assets. Faced with the result of plaintiff's attorneys' investigation, but fearing management problems and financial disaster if Anthony Pools stock was suddenly dumped on the market, defendant refused to transfer any stock to plaintiff. Plaintiff's attorneys came up with the solution defendant accepted: The property settlement agreement incorporated a trust composed of Anthony Pools stock; plaintiff got trust income and the power to invade corpus up to $30,000 annually. ▌ In substance, through skillful investigation and success in settlement negotiations, plaintiff's attorneys obtained for plaintiff, in addition to defendant's offered $415,000 in property and $1,000 monthly, trust income worth $450,000, $500 monthly in child support and defendant's promises to pay income taxes through 1966, to pay all accrued real property taxes and to pay plaintiff's attorneys' fees known to be substantial. In the light of plaintiff's attorneys' efforts and success we cannot say the trial court abused its discretion. We note in passing, $53,000 is less than 3 percent of the potential community property, a percentage approved in *Lipka* v. *Lipka,* 60 Cal.2d 472, 480 [35 Cal.Rptr. 71, 386 P.2d 671]. Two experts, furthermore, valued plaintiff's attorneys' services at $75,000 and $85,000.

Order affirmed.

Coughlin, J., and Whelan, J., concurred.

A petition for a rehearing was denied March 4, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.