[Civ. No. 19566. Fourth Dist., Div. Two. Nov. 9, 1978.]

In re the Marriage of MARIA P. and ROBERTO A. CUEVA.
MARIA P. CUEVA, Respondent, v.
ROBERTO A. CUEVA, Appellant.

**COUNSEL**

Wenke, Taylor, Schumacher & Evans, William F. Wenke, and Linda A. Chapin for Appellant.

Lemkin, Schilling & Lemkin, and Laurence P. Lemkin for Respondent.

## Opinion

**KAUFMAN, J.**—Roberto A. Cueva (husband) appeals from an interlocutory judgment of dissolution of marriage. He has expressly abandoned the appeal as to all issues save attorney fees. In the interlocutory judgment the court awarded the attorney for Maria P. Cueva (wife) $16,000 in addition to all amounts previously ordered, a total of $21,000. Husband contends that award was grossly excessive and manifests an abuse of discretion.

Wife petitioned for dissolution of the marriage on January 29, 1976. The parties had then been married approximately 22½ years and were the parents of 2 children born of the marriage, a son then 15 years old and a daughter 12 years old. Husband is a physician. His professional practice is incorporated, and in 1976, according to the testimony, he received approximately $112,000 in salary from the corporation. Additionally, the parties received considerable income from investments. A certified public accountant employed by wife to examine husband's books and records testified that husband's controllable cash flow in 1976 totaled in excess of $205,000. The total value of the parties' community property was approximately $1 million.

On February 2, 1976, wife filed an order to show cause seeking temporary spousal support, child support and attorney fees. Wife's attorney served on husband both individually and as custodian of the records of his professional corporation subpoenas duces tecum for production at the order to show cause hearing of a comprehensive list of financial records relating to income and assets. At the conclusion of the hearing on February 17, certain matters were continued for further hearing. On July 8, 1976, the parties and their respective counsel appeared in court and stipulated to orders for temporary spousal and child support. In addition, the court ordered husband to pay wife's attorney $3,000 as attorney fees and $1,500 on account of costs, the total of $4,500 to be charged against the community.

On July 13, husband filed a response to wife's petition in which he requested that custody of the children be awarded to wife, that child support be awarded, that spousal support be awarded wife, that the parties' property rights be determined as provided by law and that wife be awarded attorney fees and costs. A few days later, husband filed an at-issue memorandum estimating that trial would take two days. A

subsequent trial-setting conference resulted in a minute order estimating the time required for trial at three days.

In mid-August, wife's attorney commenced discovery proceedings. Inexplicably, husband completely refused to cooperate in discovery. He refused to answer interrogatories and further refused to provide wife with an accounting of investment income. After sending a number of letters to husband's attorney without success, on May 22, 1977, wife's attorney filed a motion to compel answers to the interrogatories and for an accounting. The motion was granted and husband was ordered to pay directly to wife's attorney the sum of $250 as attorney fees. Thereafter, husband was served with a request for production of documents for inspection and copying. He neither objected to the request nor complied with it. Accordingly, on May 2, 1977, wife's attorney filed a motion to compel production of the documents. The motion was granted and husband was ordered to pay wife's attorney an additional $250 attorney fees. Husband complied with none of these orders, and wife moved for sanctions. At a hearing on August 4, 1977, husband was ordered to pay wife's attorney $500 more and, in addition, the court ordered that husband's response be stricken unless he supplied wife with the requested answers to interrogatories by August 11, 1977. The answers were not provided, and husband's response was stricken and his default entered on August 26, 1977.

Notwithstanding the entry of husband's default, the attorneys for the respective parties attended a settlement conference on September 2. No settlement was effected, but counsel did, then and in one or more subsequent discussions, reach some sort of tacit understanding concerning the valuation that would be placed on some of the community property.

On September 13, 1977, wife's petition for dissolution was heard as a default proceeding. Wife's financial declaration was presented to the court as was the proposed interlocutory judgment. Wife was asked whether she was satisfied with the terms and provisions contained in the interlocutory judgment and indicated she was. A certified public accountant testified that he had examined husband's financial records and determined husband's salary and the parties' investment income as previously indicated. He further testified the charges for his services to that date were $5,018.30.

Finally, the matter of attorney fees and costs was discussed. Wife's attorney alluded to the original order for payment of $3,000 attorney fees

and $1,500 on account of costs and indicated to the court that costs approximated $500 "for depositions, service, appraisals, et cetera," leaving $4,000 to be credited upon attorney fees on account of the original order. No mention was made of the interim orders for additional attorney fees in the aggregate of $1,000. Wife's attorney requested a total fee of $20,000 which, after allowing credit for the $4,000 attributable to the original order, left an unpaid balance of $16,000 according to wife's attorney's calculations. The only things mentioned in justification of the request for fees in the amount of $20,000 were the length of the marriage, the considerable difficulty in effecting discovery and the size of the estate. Citing *Lipka* v. *Lipka,* 60 Cal.2d 472, 480 [35 Cal.Rptr. 71, 386 P.2d 671], and *Anthony* v. *Anthony,* 259 Cal.App.2d 156, 158 [66 Cal.Rptr. 420], counsel indicated to the court that a fee equal to 3 percent of the estate, $30,000, would normally not be deemed excessive but that $20,000 would be acceptable in this particular case.[1]

Notwithstanding husband's default, his attorney was present at the hearing and, as a matter of courtesy, was permitted to address the court. He stated that husband had been paying spousal support of $1,500 a month and child support of $250 a month for each child and that the sums requested for support as set forth in the proposed interlocutory judgment ($2,000 per month spousal support and $350 a month for each child) were a bit high particularly in view of the fact that wife would have substantial income from her share of the community property. He concluded: "With respect to the attorney's fees, I would make no comment; it has been a difficult thing for Mr. Lemkin but I would ask the Court to take into consideration the reasonableness of the request." The court responded: "Based on the financial declaration and the testimony of Mr. Mills, the Court finds that the proposed numbers in the proposed Interlocutory Judgment are reasonable. [¶] The Court will adopt the proposed Interlocutory Judgment as the order of the Court."

The interlocutory judgment was signed and filed the same day. Its final paragraph orders husband to pay wife's attorney "the sum of $16,000 on account of attorney fees and costs, in addition to all sums heretofore

---

[1]The statement of counsel reads: "In this case, totaling of all the assets and advising the Court the total community estate is approximately one million dollars, under the authority of Anthony & Anthony and Litka vs. Litka, [*sic*] a reasonable attorney fee would be three percent of the total, which is $30,000, which is unwarranted, but in this case I advise the Court we had considerable trouble with discovery; it was necessary to proceed with three separate motions to compel discovery in this case and I feel that the length of the marriage, the income, and the size of the estate, that the $16,000 additional is a reasonable figure for attorney's fees."

paid." Husband was additionally ordered to pay wife's accountant's charges of $5,018.30.

For the most part, the law governing an award of attorney fees in a dissolution action and its review on appeal are well settled. ■ A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal. (*Primm* v. *Primm,* 46 Cal.2d 690, 696 [299 P.2d 231]; *Smith* v. *Smith,* 1 Cal.App.3d 952, 958.) The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. (*Smith* v. *Smith, supra*; *Newbauer* v. *Newbauer,* 95 Cal.App.2d 36, 40 [212 P.2d 240].)

■ The major factors to be considered by a court in fixing a reasonable attorney's fee were summarized in *Berry* v. *Chaplin,* 74 Cal.App.2d 669, 679 [169 P.2d 442]: "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]" (See also, e.g., *Smith* v. *Smith, supra,* 1 Cal.App.3d at p. 959; *Anthony* v. *Anthony, supra,* 259 Cal.App.2d at p. 157; *Hurst* v. *Hurst,* 227 Cal.App.2d 859, 871 [39 Cal.Rptr. 162, 19 A.L.R.3d 635]; 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 94, pp. 101-103; Annots., 57 A.L.R.3d 475, 483 et seq. [recovery of attorney fees in the absence of contract or statute fixing amount]; 57 A.L.R.3d 584, 588 [attorney fees in tort actions]; 58 A.L.R.3d 201, 207 [attorney fees in real estate matters]; 58 A.L.R.3d 235, 242 [attorney fees in commercial matters]; 59 A.L.R.3d 152, 158 [attorney fees in domestic relations matters].) In addition, the financial circumstances of the paying spouse may be considered. (*Smith* v. *Smith, supra,* 1 Cal.App.3d at p. 958; *Howard* v. *Howard,* 141 Cal.App.2d 233, 238 [296 P.2d 592]; *Pope* v. *Pope,* 107 Cal.App.2d 537, 539-540 [237 P.2d 312].) We add that the responsibility undertaken is also an important consideration. (*Patten* v. *Pepper Hotel Co.,* 153 Cal. 460, 472 [96 P. 296].)

Additional guidance is found in rule 2-107 of the Rules of Professional Conduct of the State Bar of California, which prohibits a member of the State Bar from charging an unconscionable fee and describes a fee as

unconscionable "when it is so exorbitant and wholly disproportionate to the services performed as to shock the conscience of lawyers of ordinary prudence practicing in the same community." The rule then enumerates a number of factors to be considered in determining the reasonableness of a fee, most of which in one form or another are included in those enumerated above. (See also ABA Code of Prof. Responsibility, DR 2-106(B).)

■ Wife asserts and husband denies that the reasonableness of the fee ordered paid by the trial court is established by the fact it did not exceed 3 percent of the value of the community estate. It is not. The size of the estate may be relevant to the factors of the responsibility undertaken and the ability to pay, and in some cases may also bear on the complexity of the litigation and the skill and effort required of the attorney. But the value of the estate has no necessary relationship to the latter factors. In the case at bench, for example, notwithstanding the fact that the community estate was valued at approximately $1 million, so far as is reflected in the record the character of the property as community property was not in dispute and there was apparently no problem involving the intricate tracing of the source of funds used in acquisition of the property. Although husband was completely uncooperative in respect to discovery, there appears to have been no great difficulty in ascertaining the nature and extent of the community property. Apparently, most of the needed information was contained in the financial records examined by wife's accountant. It would even appear that valuation of the properties presented no significant problem, inasmuch as wife's costs totaled only $500, including both depositions and appraisals. Attorneys practicing family law are something more than commission merchants, and there is no rule of law in this state that an attorney's fee in a dissolution action is reasonable if it does not exceed 3 percent of the value of the community property estate irrespective of the nature and extent of the services performed. (Rule 2-107, Rules Prof. Conduct of State Bar; cf. *Patten* v. *Pepper Hotel Co., supra,* 153 Cal. at p. 472.)

Even if *Lipka* v. *Lipka, supra,* 60 Cal.2d at page 480, and *Anthony* v. *Anthony, supra,* 259 Cal.App.2d at page 158, indicated the existence of such a rule, it would no longer be viable in view of the promulgation of rule 2-107 of the Rules of Professional Conduct of the State Bar of California approved by the California Supreme Court December 31, 1974, and effective January 1, 1975, a portion of which we have quoted. (See 3B West's Ann. Bus. & Prof. Code (1974 ed., 1978 pocket cum. supp.) rules foll. § 6076, rule 1-100; Deering's Cal. Codes Ann. Rules

(1976 ed.) at p. 582; 48 State Bar J. 328.) But we do not read *Lipka* and *Anthony* as establishing such a rule.

*Lipka* is one of those admirably short opinions authored for the court by Justice McComb. Unfortunately, with respect to the issue of attorney fees it is somewhat cryptic. The only facts pertinent to the attorney fee award disclosed by the opinion are that the amount of the award was $6,500, that the community property of the parties consisted of a number of assets exceeding $215,600 in value, that there was evidence from which the trial court could determine that husband's annual income was in excess of $30,000 per year, and that, apparently, a full-blown, adversary trial was had. While the husband's overall contention on appeal was that the award was excessive, apparently his specific argument was that the trial court abused its discretion in making the award without the taking of evidence. The court rejected that argument, pointing out that *Peyre* v. *Peyre,* 79 Cal. 336, 339 [21 P. 838], "held that no testimony was necessary to determine the amount of an attorney's fee in a divorce case, and that the trial court could determine the amount of the fee from its own experience and from the facts and circumstances of the case, as they appeared from the pleadings and other papers." (60 Cal.2d at pp. 479-480.) Having responded to the contention on appeal, the court might well have terminated its discussion at that point, but, instead, it continued, stating: "The additional attorney's fee of $3,500 (the only portion of the attorney's fee granted in the order from which defendant has appealed) is only 1.6 percent of the total community property of the parties. Viewed in this light, the total fee allowed plaintiff by the trial court, $6,500, is only 3 percent of the total community property of the parties. It therefore appears that the fee was not excessive." (60 Cal.2d at p. 480.)

The quoted language would appear to have been superfluous. However, as previously noted, the value of the community estate is not wholly irrelevant. It may well indicate an ability to pay and the nature of the responsibility undertaken, and the court may very well have had those factors in mind, at least in part, because in the paragraph immediately preceding the quoted language it referred both to the value of the estate and the annual income of the husband. In addition, as previously noted, the nature and value of the community estate may in some cases be significant in respect to the factors of complexity and difficulty of the case and skill and effort required of the attorney. This may have been true in the *Lipka* case. We have no way of knowing. In any event, we do not believe the court intended to say that an award of attorney fees would be deemed reasonable if not in excess of 3 percent of the value of the

community property irrespective of the effort and skill required and the other factors previously mentioned. Certainly, there is no indication in *Lipka* that the trial court employed any such formulation in setting the amount of the attorney fee. Moreover, on the face of it, if in fact the case was fully contested and tried, the award of $6,500 in attorney fees would seem to have been well within the range of permissible judicial discretion.

In *Anthony*, decided prior to enactment of the Family Law Act commanding equal division of the community property, the community assets were conservatively valued at $2,390,000 exclusive of a house under construction in Newport Beach and a lot in Lucerne Valley of unknown value. The principal asset was Anthony Pools, Inc., which during the marriage had grown from an original investment of $20,000 to a book value of $1.9 million and a market value between $2½ and $3 million. The husband denied that any of the Anthony Pools stock was community property and proposed that wife accept $415,000 in property and $1,000 monthly in satisfaction of her rights. The attorney representing wife negotiated a settlement which provided that husband would pay wife's reasonable attorney fees as fixed by the court. The court fixed the fees at $53,000. On husband's appeal, the court affirmed the award. Its rationale is clearly disclosed in the opinion: "[P]laintiff hired attorneys whose expertise in accounting, corporate finance and community property law facilitated a thorough investigation of Anthony Pools, Inc. and defendant's assets. Faced with the result of plaintiff's attorneys' investigation, but fearing management problems and financial disaster if Anthony Pools stock was suddenly dumped on the market, defendant refused to transfer any stock to plaintiff. Plaintiff's attorneys came up with the solution defendant accepted: The property settlement agreement incorporated a trust composed of Anthony Pools stock; plaintiff got trust income and the power to invade corpus up to $30,000 annually. In substance, through skillful investigation and success in settlement negotiations, plaintiff's attorneys obtained for plaintiff, in addition to defendant's offered $415,000 in property and $1,000 monthly, trust income worth $450,000, $500 monthly in child support and defendant's promises to pay income taxes through 1966, to pay all accrued real property taxes and to pay plaintiff's attorneys' fees known to be substantial. In the light of plaintiff's attorneys' efforts and success we cannot say the trial court abused its discretion. We note in passing, $53,000 is less than 3 percent of the potential community property, a percentage approved in *Lipka* v. *Lipka*, 60 Cal.2d 472, 480 [35 Cal.Rptr. 71, 386 P.2d 671]. Two experts, furthermore, valued plaintiff's attorneys' services at $75,000 and

$85,000." (259 Cal.App.2d at p. 158.) As the court expressly said, its reference to 3 percent of the community property and *Lipka* was no more than a passing observation. The real basis for the affirmance was the demonstration by the record that wife's attorneys' investigative efforts, skill and ingenuity in negotiating resulted in wife's recovering approximately a half million dollars in excess of the settlement proposed by husband. In contrast to the case at bench, we also note that in *Anthony* the attorney fee question was apparently fully litigated and the trial court had received the expert testimony of two witnesses that the reasonable value of wife's attorneys' services was between $75,000 and $85,000. (*Id.*)

In the case at bench, the attorney fee award resulted from a default hearing that consumed perhaps 20 minutes[2] in which no evidence of any kind was submitted to the court concerning the reasonable value of wife's attorney's services. Wife asserts there was no need for her to adduce evidence in support of the amount requested for fees because "the trial court may rely on its own experience and knowledge in determining the amount of an award of attorney's fees." Wife's statement of the rule is overbroad and incorrect. It is true that a few cases may be found stating the rule in misleadingly broad language. (See, e.g., *Baker* v. *Eilers Music Co.,* 175 Cal. 652, 654 [166 P. 1006]; *Howard* v. *Howard, supra,* 141 Cal.App.2d at p. 238.)[3] ■ Correctly stated, the rule is that when the trial court is informed of the extent and nature of the services rendered, it may rely on its own experience and knowledge in determining their reasonable value.[4] (See, e.g., *Lipka* v. *Lipka, supra,* 60 Cal.2d at p. 480; *Elconin* v. *Yalen,* 208 Cal. 546, 549-550 [282 P. 791]; *Kirk* v. *Culley,* 202 Cal. 501, 508-509 [261 P. 994]; *Spencer* v. *Collins,* 156 Cal. 298, 307 [104 P. 320]; *Patten* v. *Pepper Hotel Co., supra,* 153 Cal. at p. 472; *Estate of Straus,* 144 Cal. 553, 557-558 [77 P. 1122]; *Peyre* v. *Peyre, supra,* 79 Cal. at pp. 339-340; *Jones* v. *Jones, supra,* 135 Cal.App.2d at p. 64 [see fn. 3,

[2]The default hearing produced a reporter's transcript of nine pages.

[3]In *Howard* the court said: "The judge's experience and knowledge afford sufficient basis for fixing the amount of the lawyer's fee even in the absence of specific evidence on the subject." The primary authority cited for this proposition was *Jones* v. *Jones,* 135 Cal.App.2d 52, 64 [286 P.2d 908]. Reading *Jones* at the place cited demonstrates graphically the overbreadth of the language in *Howard.* The *Jones* court said: "Direct evidence of the reasonable value of the attorney's fee did not have to be introduced. *Evidence as to such reasonable value of the services is necessarily before the trial court when it hears a case.* The trial judge, being a lawyer, *can readily ascertain from the presentation of the case the approximate time spent in preparation and trial,* and the relative financial circumstances of the parties." (Italics added.)

[4]In a substantial number of jurisdictions evidence of the reasonable value of the services rendered is required. (See Annot. 18 A.L.R.3d 733, 736 et seq. [reasonableness of attorney fees].)

*ante*]; see also, 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 97, pp. 106-107.)

In many cases the trial court will be aware of the nature and extent of the attorney's services from its observation of the trial proceedings and the pretrial and discovery proceedings reflected in the file.[5] (See, e.g., *Lipka* v. *Lipka, supra,* 60 Cal.2d at p. 480; *Peyre* v. *Peyre, supra,* 79 Cal. at pp. 339-340; *Jones* v. *Jones, supra.*) ▬ In the case at bench, however, there was nothing before the trial court disclosing services of such a nature and extent as to justify an attorney fee of $21,000. Whether such a fee might be justified by the nature and extent of the services counsel actually rendered we are unable to say because the record simply does not adequately disclose the nature and extent of the services performed. The information available to us in the record, however, is precisely the same as that available to the trial court. The clerk's transcript includes every document filed in the trial court, and the transcript of the hearing is complete.

As previously mentioned, the trial consisted of only a brief default hearing. Unlike the situation in which an adversary trial has taken place, there was nothing in the hearing itself that could make the court aware of the nature and extent of the services rendered. No evidence indicating the nature and extent of the services rendered was introduced, and the only considerations to which the court's attention was invited by counsel as bearing upon the amount of the fee to be awarded were the duration of the marriage, the value of the estate, and the difficulty in effecting discovery. While the value of the estate certainly indicated an undertaking of considerable responsibility and would in and of itself support a substantial fee, there was nothing presented at the hearing or reflected in the file indicating that the case was complex or required any extraordinary skill or unusual experience. So far as is indicated by the record, husband's refusal to comply with discovery requests, while causing wife's attorney to perform some additional services, would appear to have had the practical effect of reducing the services required and making possible prompt disposition. So far as the record discloses, the extra services required of wife's attorney as a result of husband's recalcitrance consisted

---

[5]Even in these cases it is advisable that a record be made adequate to support the trial court's assessment of value on appeal without undue speculation on the part of the reviewing court. While the determination of the reasonable value of an attorney's services is committed to the trial court's discretion, its exercise of discretion is nevertheless subject to review. (See *Serrano* v. *Priest,* 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]; *San Gabriel Valley Water Co.* v. *City of Montebello,* 84 Cal.App.3d 757, 768-769 [148 Cal.Rptr. 830].)

of about ten letters to opposing counsel, most of them not over five or six lines in length; the preparation and filing of several motions, declarations and points and authorities, none of them lengthy or complex; three court appearances concerning these motions in respect to which no opposing documents were filed; and the preparation of appropriate orders, again neither complex nor lengthy. Frankly, the significance of the duration of the marriage to the question of the reasonable value of counsel's services escapes us. If anything, in the case at bench it would appear to have eliminated some difficult problems that might otherwise have existed in ascertaining the character of the parties' property. The clerk's transcript also indicates that wife's attorney made a number of court appearances, said in wife's brief to total nine, including three related to husband's refusal to make discovery. So far as the record indicates, however, none of these appearances involved any protracted time, and as to a number of them the absence of any opposing papers would suggest they were unopposed. The actual time involved is, of course, not reflected in the papers, but considering the nature of the appearances and the lack of opposition in many instances, we would be hard-pressed to estimate the total time required for all the appearances, including the default hearing, as more than 15 hours. We have no doubt that counsel also spent some hours in office work and conferences with wife and, perhaps, with the accountant and husband's attorney, but none of these are reflected in the record, and the nature and extent of these services were unknown to the trial court as they are to us. Reference was made in counsel's statement during the default hearing to a deposition or depositions, but again, the extent and nature of services required in that connection are unknown to us as they were to the trial court. We do observe that the costs, including costs of service, appraisals and depositions, did not exceed a total of $500.

By mentioning "hours," we do not mean to be understood as indicating that the reasonable value of an attorney's services must bear a direct relationship to the number of hours spent working on the case. Time spent may have been unnecessary and unproductive or entirely dispro-portionate to the result to be achieved. One hour spent in negotiation might be more valuable than 10 hours spent in trial. ■ We fully agree with the statement in *In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58] [disapproved on another ground in *In re Marriage of Morrison,* 20 Cal.3d 437, 453 (143 Cal.Rptr. 139, 573 P.2d 41)], that ". . . a desirable objective of domestic litigation is prompt and equitable resolution of marital difficulties rather than their bitter prolongation. Conscientious and successful efforts by counsel to resolve as many areas of disagreement as possible without judicial intervention is entitled to

serious consideration in awarding attorney's fees. Compensable professional legal skill is not limited to trial time or courtroom techniques alone." (Cf. *Anthony* v. *Anthony, supra,* 259 Cal.App.2d at p. 158.) However, these principles have little, if any, application to the case at bench based on the present record.

So far as the record discloses, this was no negotiated disposition; it was a default proceeding resulting from the striking of husband's response because of his refusal to comply with discovery orders. The record does show that one court appearance made by wife's attorney was the attendance of a settlement conference after husband's default had been entered, and it is true that at the default hearing wife's attorney informed the court that the values placed on a number of the parties' assets in the proposed interlocutory judgment resulted from discussions with husband's attorney and that in several instances the valuations represented compromises. Counsel's conduct in negotiating to reach mutually acceptable figures after husband's default was entered was highly responsible and commendable and might well be considered in a determination of the reasonable value of his services. However, all that was presented to the court was a fleeting reference to the fact that some of the values had resulted from negotiation. There was nothing before the trial court and there is nothing in the record disclosing the nature and extent of counsel's services in this regard nor to what extent they were beneficial in avoiding controversy or expediting disposition.

Finally, it is contended that the fact that husband's attorney voiced no strenuous objection to the attorney fee requested at the default hearing indicates the amount requested was reasonable. We cannot agree. Even under normal circumstances most attorneys undoubtedly feel somewhat awkward and inhibited when required to argue that the value of the adversary attorney's services is less than claimed. Here, however, husband's attorney was in a particularly disadvantageous position to voice strong objection. His client's default had been entered and it was only by wife's attorney's courtesy that he was permitted to address the court at all. The fact that notwithstanding the delicacy of the situation husband's attorney had the temerity to say to the court ". . . but I would ask the Court to take into consideration the reasonableness of the request" indicates that he felt rather strongly that the request was unreasonable.

We conclude that, while husband's characterization of the proceedings as nothing more than a default dissolution proceeding is

inaccurate and that while the responsibility undertaken would by itself support an award of a substantial fee, there was nothing before the trial court disclosing services of such a nature as could in reason support an award resulting in a fee totaling $21,000.

Accordingly, that part of the interlocutory judgment of dissolution of marriage awarding wife's attorney $16,000 as attorney fees in addition to all other sums previously ordered paid is reversed. Otherwise the appeal, having been abandoned in all other respects, is dismissed. The parties shall bear their own respective costs on appeal.

Tamura, Acting P. J., and McDaniel, J., concurred.