[Civ. No. 18815. Fourth Dist., Div. One. Oct. 20, 1980.]

FED-MART CORPORATION, Plaintiff,
Cross-defendant and Appellant, v.
PELL ENTERPRISES, INC., Defendant and Cross-complainant;
SOL PRICE, Cross-defendant and Respondent.

COUNSEL

Stroock & Stroock & Lavan, Henry J. Silberberg, David C. Pollack and Michael A. Rubel for Plaintiff, Cross-defendant and Appellant.

James Edgar Hervey and Jacklyn Becker Horton for Cross-defendant and Respondent.

OPINION

**STANIFORTH, J.**—The Fed-Mart Corporation (Fed-Mart) appeals from orders directing indemnification of its former president, Sol Price, for his expenses incurred in defense of a cross-complaint in the underlying litigation between Fed-Mart and a Fed-Mart franchisee and in his proceedings seeking indemnification for attorney fees and costs under Corporations Code section 317.[1] The first order (Aug. 2, 1978) found Price had acted in good faith and in a manner he reasonably believed to be in the best interests of Fed-Mart and was therefore entitled to in-

---

[1]Corporations Code section 317 reads in pertinent part: "(a) For the purposes of this section, 'agent' means any person who is or was a director, officer, employee or other agent of the corporation,...'expenses' includes without limitation attorneys' fees and any expenses of establishing a right to indemnification under subdivision (d) or paragraph (3) of subdivision (e).

"(b) A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any proceeding (other than an action by or in the right of the corporation to procure a judgment in its favor) by reason of the fact that such person is or was an agent of the corporation, against expenses...actually and reasonably incurred in connection with such proceeding if such person acted in good faith and in a manner such person reasonably believed to be in the best interests of the corporation and, in the case of a criminal proceeding, had no reasonable cause to believe the conduct of such person was unlawful....

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"(e) Except as provided in subdivision (d), any indemnification under this section shall be made by the corporation only if authorized in the specific case, upon a determination that indemnification of the agent is proper in the circumstances because the agent has met the applicable standard of conduct set forth in subdivision (b) or (c), by:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"(3) The court in which such proceeding is or was pending upon application made by the corporation or the agent or the attorney or other person rendering services in connection with the defense, whether or not such application by the agent, attorney or other person is opposed by the corporation.

"(f) Expenses incurred in defending any proceeding may be advanced by the corporation prior to the final disposition of such proceeding upon receipt of an undertaking by or on behalf of the agent to repay such amount unless it shall be determined ultimately that the agent is entitled to be indemnified as authorized in this section."

demnification from Fed-Mart under Corporations Code section 317. The second order (Mar. 6, 1979) directed Fed-Mart to pay Price's attorney fees of $70,000 and costs of $3,500.[2]

## Contentions

Fed-Mart contends the trial court erred in finding Price acted in good faith and in a manner he reasonably believed to be in the best interests of Fed-Mart. Fed-Mart argues Price, while chief executive of Fed-Mart, permitted the perpetration of per se violations of the antitrust laws and therefore could not have acted in the "good faith and best interest" manner required by section 317. Second, Fed-Mart makes the broad assertion Price failed to carry his burden of proving "actual" expenses under section 317, and, therefore, he was not entitled to indemnification. Fed-Mart next argues the trial court was in error when it, despite Price's failure to prove the "actual costs and time reasonably expended," awarded attorney fees on a "quantum meruit" basis without a determination of the number of hours spent by the attorneys. Finally, Fed-Mart cites the fact that Price had paid his attorneys $50,000 and argues he was under no legal obligation to pay any additional sum; therefore reasons Fed-Mart, the trial court's award should be limited to $50,000.

## Facts

Fed-Mart operates a chain of discount department stores throughout the southwestern United States. Sol Price, an attorney, founded Fed-Mart in 1954 and served as its chief executive and as a member of its board of directors until December 5, 1975. During part of that period, Fed-Mart franchised smaller stores. In 1965 Pell Enterprises, Inc. (Pell) became a Fed-Mart franchisee but in October 1972 gave Fed-Mart notice of termination of its franchise agreement.

A dispute arose, whereupon Fed-Mart brought the underlying lawsuit against Pell seeking damages and appointment of a receiver to supervise the termination of the Pell franchise. The Pell owners cross-complained against Fed-Mart, Sol Price, and others asserting numerous personal

---

[2]Two previous matters have been before this court related to or arising out of a marathon running battle between Fed-Mart and its former president, Sol Price. (*Price v. Fed-Mart*, 4 Civ. 16606; *Fed-Mart v. Superior Court*, 4 Civ. 18998.)

claims, a class action, and an antitrust claim on behalf of all Fed-Mart franchisees.

Following the filing of the Pell cross-complaint, Fed-Mart's board of directors (Apr. 12, 1974) adopted a corporate resolution declaring Price and other corporate officers had acted in good faith and in a manner they reasonably believed to be in the best interest of the corporation. The resolution further authorized indemnification to Price and others for legal expenses, costs and liability incurred as a result of the Pell cross-complaint. In 1975 there was a change of ownership in Fed-Mart, and in December 1975 Price was dismissed from his position as president and chief executive officer. Price promptly filed a lawsuit for breach of his employment contract. Despite this dispute between Fed-Mart and Price, Fed-Mart's attorneys continued to represent Price in the Pell litigation with Fed-Mart paying all expenses.

However, following a judgment favorable to Price in his employment contract suit, Fed-Mart filed (Mar. 1977) a new lawsuit (indemnity litigation) seeking a declaratory judgment that it was not bound by the April 12, 1974, resolution to indemnify Price in the Pell litigation. Price cross-complained seeking a judgment declaring Fed-Mart was obligated to indemnify him. Price premised his claims for indemnification on various grounds including his right to indemnity pursuant to Corporations Code section 317. From approximately the time of the initiation of the indemnity litigation, Price was represented by separate counsel with Fed-Mart paying none of his expenses.

In September of 1977, Price entered into a settlement agreement with Pell whereby all nonclass action claims against Price were dismissed with prejudice. Thereafter (Dec. 5, 1977) the trial court dismissed Price from Pell's class action and antitrust claim. After trial of the underlying Pell litigation, the trial court found in Fed-Mart's favor on all claims except one. At the conclusion of this trial, Price filed a motion for indemnification pursuant to Corporations Code section 317.[3]

After hearing, the trial court found Price had acted in good faith and in a manner he reasonably believed to be in the best interests of Fed-Mart and therefore should be indemnified by the corporation pursuant

---

[3]Price's claim for indemnification on the grounds of contract and estoppel had previously been denied but the court had declined to rule on Price's right to indemnity under section 317 until completion of the trial between Fed-Mart and Pell.

to section 317. At the conclusion of three additional days of hearings on the issue of attorney fees and costs incurred by Price, the trial court found expenses "actually and reasonably incurred" by Price to be $70,000 attorney fees and $3,500 in costs and directed payment. Fed-Mart appeals these orders.

## DISCUSSION

## I

Corporations Code section 317, subdivision (e), provides a corporate agent shall only be indemnified for "expenses actually and reasonably incurred" if it is determined the agent has met the applicable standard of conduct required under subdivision (b) or (c). The trial court found Price met the required standard for subdivision (b) of acting in "good faith and in a manner such person reasonably believed to be in the best interests of the corporation." Fed-Mart, however, asserts the trial court also found Fed-Mart, under Price's direction, perpetrated "per se" violations of the antitrust laws, to wit: price fixing and tying arrangements and therefore committed reversible error in concluding Price acted in "good faith." Fed-Mart misstates the record when it asserts the trial court made such findings of fact. It is true the trial court did find Pell presented evidence which *could* support a finding of price fixing and tying arrangements. However, this was not a determination on the merits of this issue but rather was in response to Fed-Mart's motion for judgment under Code of Civil Procedure section 631.8[4] after Pell had completed its presentation of evidence on its cross-complaint. The court granted Fed-Mart's motion on the grounds Pell had failed to show any damages. Therefore the charges of unlawful price fixing, tying agreements were never in fact litigated. The trial court's finding of evidence of price fixing and tying arrangements signifies at most that Pell produced sufficient evidence to make a prima facie showing, no more. (*Agricultural Ins. Co. v. Smith* (1968) 262 Cal.App.2d 772, 776 [69 Cal.Rptr. 50].) There was no factual finding that Fed-Mart, under Price, had engaged in illegal practices. Substantial evidence supports the trial court finding of Price's good faith in defense of the Pell cross-complaint.

---

[4]Code of Civil Procedure section 631.8 provides in pertinent part: "After a party has completed his presentation of evidence in a trial by the court, the other party, *without waiving his right to offer evidence in support of his defense . . . in the event the motion is not granted*, may move for a judgment." (Italics added.)

## II

Fed-Mart next asserts trial court error in granting a quantum meruit award to Price of attorney fees of $70,000 and $3,500 court costs under authority of Corporations Code section 317.

Section 317 entitles an agent to indemnification for expenses "actually and reasonably incurred" in connection with covered proceedings including expenses of establishing a right to indemnification through a court determination under subdivision (e)(3). The corporate agent, however, is not necessarily entitled to indemnification for legal expenses incurred in pressing all causes of action against the corporation. Price, for example, concedes he is not entitled to attorney fees for expenses incurred solely in pursuing alternative causes of action in the indemnification litigation, such as the contractual obligation of Fed-Mart to him under the corporate resolution of April 12, 1974, or on an estoppel theory. Price was entitled to receive indemnification for all actual and reasonable expenses incurred in the Pell litigation and for those expenses incurred in the indemnification litigation which were connected with indemnification authorized by section 317.

Fed-Mart asserts the trial judge must be able to segregate, on an hourly basis, those expenses attributable solely to Price's defense in the Pell litigation or in the proceedings to establish his right to indemnification under section 317 before an award is authorized.

In order to quantify Price's indemnifiable expenses, there were three days of hearings with extensive testimony from Price's counsel as to work performed and method of record keeping. Price's counsel detailed the common issues underlying the various theories of indemnification and the interwoven nature of indemnifiable and nonindemnifiable matters.

The attorneys' records of time spent pursuing Price's causes did not separate hours spent on the Pell litigation from those spent on the indemnification litigation, nor did the computer records separate the time spent on specific theories under which Price might gain indemnification.

However, the trial court had before it, among other things, the entire work product of Price's attorneys in both the Pell litigation and the indemnity proceedings and a computerized printout of all time expended by Price's counsel in the two actions and various lists of discovery un-

dertaken and pleadings filed in the two matters. The computer printout of the time expended by Price's counsel did not separately list the time spent on matters formally undertaken in the Pell litigation and matters formally undertaken in the indemnity matters but did identify for each segment of time listed, the action taken by the attorney during that particular time period.[5] Price's counsel testified in detail as to the manner in which the various services rendered in the indemnity action related to either Price's defense of the Pell litigation or to demonstrating Price's entitlement to indemnification pursuant to Corporations Code section 317.

Despite this plethora of evidence, the trial judge did not make a determination of the *total hours spent* by Price's attorneys on *indemnifiable matters.* ██ In his memorandum of intended decision,[6] the trial judge explained: "Price has proved that his counsel expended considerable effort in representing him in both the indemnity case and the Pell case but he has not proved how much time was spent on issues relevant to Section 317 in the indemnity case nor has he shown how much time was attributable to the Pell defense. Counsel for Price devoted considerable time and expense to nonreimbursable matters in the indemnity action. . . ."

██ The state of the evidence was such that the trial court could not, because of the very nature of the conjoined issues, interwoven theories of recovery, make an intelligent segregation of the precise number of hours spent on *indemnifiable* issues only. Therefore, reasoned the trial court: "[It] must either reject the claim or make an award on the

---

[5]Exhibit C listed all depositions taken in the Pell litigation while Price was a party. Price's counsel testified he or someone from his office attended all depositions listed on Exhibit C except the depositions of Nicholas Pellegrino and Charles Caruso. The time sheets indicate the dates the depositions were taken, how much time the attorneys spent in attending those depositions.

Exhibit F identified all interrogatories and requests for admissions propounded in the Pell litigation while Price was a party, including interrogatories propounded by Price to Price. The computer printout of the time expended by Price's attorneys identified the time spent drafting interrogatories and responding to interrogatories in the Pell litigation.

[6]This memorandum of intended decision did not constitute a judgment of the trial court and was not binding on the court (Cal. Rules of Court, rule 232(a); *Ripani* v. *Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 614 [157 Cal.Rptr. 272]).) It may be used to show the process used and the legal principles applied by the trial court in reaching its decision. (See *South Bay Irr. Dist.* v. *California-American Water Co.* (1966) 61 Cal.App.3d 944, 964 [133 Cal.Rptr. 166]; *Packer* v. *Sillas* (1976) 57 Cal. App.3d 206, 218 [128 Cal.Rptr. 907]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal. App.2d 345, 366 [28 Cal.Rptr. 357].)

basis of quantum meruit, i.e., what would competent counsel charge for such services, considering the responsibility imposed on counsel, the risks to which the client was exposed, the pressure of time, the ability of the client to pay, the complexity of the matter and the results obtained. The evidence will support an award based upon quantum meruit."

Fed-Mart correctly argues Price has the burden of proving those facts essential to his claim (Evid. Code, § 500) and asserts under current case law both the number of compensable hours and the reasonable hourly compensation are essential factors in determining reasonable and actual attorney fees. Therefore, Fed-Mart argues the trial judge reversibly erred when, after determining Price had failed to carry his burden of proof as to the "actual costs and time" expended to defend the Pell litigation and press his right to section 317 indemnity, he nevertheless granted an award based on quantum meruit.

It is clear from the judge's memorandum he based the award upon a consideration of the usual and customary factors effecting what competent counsel would reasonably charge for similar services. In support of its contention that a determination on the specific number of attorney hours spent on *compensable* matters was fundamental to an award, Fed-Mart cites *Serrano* v. *Priest* (1975) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*) and *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747 [155 Cal.Rptr. 269].

In *Serrano III* the Supreme Court upheld an award of reasonable attorney fees under the "private attorney general" theory. In affirming the lower court decision, the court stated: "Fundamental to its determination and properly so—was a careful compilation of the time spent and reasonable hourly compensation...." (*Id.*, at p. 48.) The appeal court in *Mandel* v. *Lackner, supra*, 92 Cal.App.3d 747, expanded *Serrano III* when it reversed and remanded an award of attorney fees, this time under the "substantial benefit" theory, because the lower court had abused its discretion in failing to make an initial determination of fees based on the "essential factors of time and unit value." (*Id.*, at p. 758.) The *Mandel* court held the award of attorney fees must be supported "by a record showing, in formal findings or otherwise, that it was calculated from a base 'compilation of the time spent and reasonable hourly compensation....'" (*Id.*, at pp. 758-759, fn. 6.) Once the initial determination is made, the trial court is free to exercise its discretion to increase or decrease the award by considering the other relevant factors. (*Id.*, at p. 758.)

Both *Serrano III, supra*, and *Mandel* v. *Lackner, supra*, applied a doctrine which is a judicially developed exception to the general rule, codified in section 1021 of the Code of Civil Procedure, that attorney fees are not recoverable by a prevailing litigant in the absence of an agreement or statutory authorization. The so-called "equitable foundations" of the doctrine have been defined by the Supreme Court as follows: "'[W]hen a class action or corporate derivative action results in the conferral of substantial benefits, whether of a pecuniary or non-pecuniary nature, upon the defendant in such an action, that defendant may, *in the exercise of the court's equitable discretion*, be required to yield some of those benefits in the form of an award of attorney's fees.'" (*Serrano, III*, p. 34; italics added.)

*Serrano III* points to three "equitable" theories upon which a successful litigant's attorney can be compensated from the fruits of the litigation, or by the other side, in a particular case warranting departure from the general rule to the contrary. They are the "common fund" doctrine, the "substantial benefit" rule and the "private attorney general" concept. (*Serrano III*, pp. 31-32; 34-48.)

*Both Serrano III, supra*, and *Mandel* v. *Lackner, supra*, involved compensation for lawyers in public interest litigation where the prevailing parties were essentially "involuntary clients." To require as starting point in every fee award matter a careful compilation of the time spent —where the "client" may be a large amorphous body of persons having no direct relation to no choice in the choosing of the lawyer serving in the common litigation—is most necessary. It is "obviously vital to the prestige of the bar and the courts." (*City of Detroit* v. *Grinnell Corp.* (2d Cir. 1974) 495 F.2d 448, 470.) Such a rigid requirement, however, is not equally "vital" when such precipitating facts are not present.

Furthermore, there is no indication *Serrano III* intended to change long standing California decisions setting forth the principles under which attorney fees are to be set by a court in statutory and contractual settings. In fact, the court in *Mandel, supra*, did not perceive *Serrano III* as representing any change. (*Mandel* v. *Lackner, supra*, 92 Cal. App.3d 747, 756.)

California courts have long considered the time spent in litigating a case as only one of many factors to be considered by a trial court in awarding attorney fees. (See *In re Marriage of Cueva* (1978) 86 Cal. App.3d 290, 296, 300-303 [149 Cal.Rptr. 918] (dissolution proceeding);

*Anthony* v. *Anthony* (1968) 259 Cal.App.2d 156, 157 [66 Cal.Rptr. 420] (divorce proceeding); *Cline* v. *Zappettini* (1955) 131 Cal.App.2d 723, 728 [281 P.2d 35] (attorney fee contract); *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 [169 P.2d 442] (paternity proceeding).) In *Boller* v. *Signal Oil & Gas Co.* (1964) 230 Cal.App.2d 648, 652-654 [41 Cal.Rptr. 206] (contract litigation), the trial court was criticized for placing undue emphasis on the amount of time spent. And in *In re Marriage of Cueva, supra,* 86 Cal.App.3d 290, the appeal court engaged in a process common to trial judges when setting attorney fees, looking to the *work product, skill of the attorneys,* etc., as a basis for determination of attorney hours reasonably spent and therefore compensable. (Id., at p. 302.)[7] The *Cueva* court (p. 301) cites *Serrano III, supra,* but makes no similar "starting point" requirement of attorney time sheets.

■ Numerous cases have based awards of attorney fees on consideration of factors such as the nature of the litigation, the amount involved, the skill required, and experience of counsel, without making any determination of the hours spent or of a reasonable hourly rate. (*La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7] (statutory attorney fees in condemnation proceeding); *Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 622, 624-625 [134 Cal.Rptr. 602] (promissory note litigation); *Straub* v. *Straub* (1963) 213 Cal.App.2d 792, 799 [29 Cal.Rptr. 183] (divorce proceeding).)

---

[7]The painter James McNeill Whistler reaches to the heart of this matter in this anecdote, where he tells of his cross-examination by the Attorney General in his libel action against Oxford Professor John Ruskin: "'Now, Mr. Whistler. Can you tell me how long it took you to knock off that nocturne?

"...'I beg your pardon?' (Laughter.)

"'Oh! I am afraid that I am using a term that applies rather perhaps to my own work. I should have said, "How long did you take to paint that picture?"'

"'Oh, no! permit me, I am too gratefully flattered to think that you apply, to work of mine, any term that you are in the habit of using with reference to your own. Let us say then how long did I take to—"knock off," I think that is it—to knock off that nocturne; well, as well as I remember, about a day.

"'Only a day?

"'Well, I won't be quite positive; I may have still put a few more touches to it the next day if the painting were not dry. I had better say then, that I was two days at work on it.

"'Oh, two days! The labor of two days, then, is that for which you ask two hundred guineas!

"'No;—I ask it for the knowledge of a lifetime.' (Applause.)" (The Law as Literature, pp. 152, 153; *Whistler* v. *Ruskin*, Libel Action (Nov. 15, 1870) Ephraim London's Vol. II The World of Law.)

■ An award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence. (*Lipka* v. *Lipka* (1963) 60 Cal 2d 472, 479-480 [35 Cal.Rptr. 71, 386 P.2d 671]; *Excelsior etc. School Dist.* v. *Lautrup* (1969) 269 Cal.App.2d 434, 448 [74 Cal.Rptr. 835]; *Straub* v. *Straub, supra,* 213 Cal.App.2d 792, 800-801.)

Fed-Mart cites no California authority which mandates a trial court, in granting a *statutory* award of fees (in contrast to an award of fees *in equity*) to make a specific finding of attorney hours expended or be guilty of abuse of discretion.

Nor does *Serrano III* dictate such a significant change in California law. In fact *Serrano III* states flatly: "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Id.,* at p. 49.)

Here the award was made by an experienced trial judge with percipient knowledge of the skill of the lawyers and work performed, after three days of hearings and careful consideration of extensive evidence. The trial judge applied his broad knowledge and expertise to the evidence before him and established a reasonable value of $70,000 for attorney fees plus $3,500 costs.

One further body of law supports our affirmance of the attorney fee award here made. Price advanced three distinct theories as bases for indemnification of attorney fees and costs. These theories were factually intertwined at every stage of the proceedings. Thus it would be impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units. The Supreme Court in *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129-130 [158 Cal.Rptr. 1, 599 P.2d 83], points out "attorneys fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which the fees are proper and one in which they are not allowed."

In *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 36 [147 Cal.Rptr. 655], a contention parallel to Fed-Mart's was urged. The court stated: "While the *Shannon* [*Shannon* v. *Northern Counties Title Ins. Co.*

(1969) 270 Cal.App.2d 686 (76 Cal.Rptr. 7)] case recognizes the trial court's discretion to allocate the proportionate share of attorney's fees attributable to one aspect of a case where appropriate, it does not require the trial court to make such an allocation. In the present case, the issues presented on the complaint, the Marlers' cross-complaint for breach of contract, and Lampliter's cross-complaint for indemnity were inextricably interrelated. Under these circumstances, it was not an abuse of discretion for the trial court to refuse to allocate attorney's fees attributable to one portion of a case." (Italics added.) (See also *Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 37 [161 Cal.Rptr. 516].)

■ The determination of what constitutes the actual and reasonable attorney fees is committed to the sound discretion of the trial court. An appellate court will interfere with that determination only where there has been a manifest abuse of discretion. We find no abuse of discretion here.

### III

■ Fed-Mart's last contention subsumes an obligation for Price's attorney fees but urges Price's payment to his attorney of $50,000 determined and limited the amount of legal expenses to be indemnified.

Price's fee arrangement consisted of an informal understanding that the attorney would be entitled to receive fees only after Price's right to indemnification had been established by the court. The amount of attorney fees was to be whatever the trial court determined to be "reasonable" fees; it was further understood that although Price had no legal obligation to pay his attorney in excess of the court award, the parties would be "fair" to one another and Price would compensate his attorney if Price felt the court award was insufficient. Upon this understanding, Price paid his attorney $50,000.

While Price's legal obligation to his attorney might be limited to $50,000 if the court did not indemnify him for actual and reasonable incurred attorney fees, the trial court determined Price was entitled to be indemnified; thus the contingency specified in his fee agreement had occurred and he was legally obligated to pay his attorney whatever he received by way of indemnification. Fed-Mart's contention is without merit.

Fed-Mart further argues that Price's fee arrangement was a "contingent" fee agreement and as such is not subject to indemnification under section 317 because the fees were not "actually incurred."

Fed-Mart's argument assaults a straw man. The trial court determined after looking into a mountain of evidence what legal expenses were actually incurred and their reasonableness. The court's assessment was based upon statutory duties imposed on Fed-Mart and the court, not upon any arrangement, contingent or otherwise, existing between Price and his attorney.

The trial judge wisely pointed out many corporate employees in an adversarial situation with their employers would not be able to defend a major lawsuit unless they could enter into a fee agreement, dependent upon a favorable court determination. Nothing in Corporations Code section 317 hints at a legislative intention to preclude such an underlying contingent fee arrangement.

## IV

Price urges he is entitled to indemnification from Fed-Mart for attorney fees on appeal. Corporations Code section 317 provides for indemnification of expenses including "without limitation attorney fees and any expenses of establishing a right to indemnification." (§ 317, subd. (a).) When a statute provides for an award of attorney fees, this includes fees for legal services rendered on appeal as well as during trial. (*Rio Vista Gas Assn.* v. *State of California* (1961) 188 Cal.App.2d 555, 565 [10 Cal.Rptr. 559].) Price is entitled to indemnification of expenses actually and reasonably incurred in connection with this appeal.

The orders appealed are affirmed and the cause remanded solely for trial court assessment and order directing Fed-Mart to indemnify Price for expenses actually and reasonably incurred on this appeal.

Brown (Gerald), P. J., and Lord, J.,* concurred.

A petition for a rehearing was denied November 4, 1980, and appellant's petition for a hearing by the Supreme Court was denied December 24, 1980. Mosk, J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.