Filed 1/20/16  Asphalt Professionals v. Emaron Homes CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| ASPHALT PROFESSIONALS, INC., Plaintiff and Appellant, v. EMARON HOMES, LLC et al., Defendants and Respondents. | 2d Civil No. B261674 (Super. Ct. No. SC044181) (Ventura County) |

Asphalt Professionals Inc. (API) appeals an order awarding costs and a total of $390,000 attorney fees to defendants Emaron Homes, LLC (Emaron); Fairland Construction, Inc. (Fairland); and Real Estate Spectrum, Inc. (RES).  We conclude, among other things, that the trial court did not abuse its discretion in making the attorney fee award.  We affirm.

### FACTS

API filed actions against T.O. IX, LLC, Emaron, Fairland, RES and other defendants.  API alleged causes of action for breach of a construction contract, quantum meruit and fraud involving services it provided on a T.O. IX housing development project.  API alleged Emaron, Fairland and RES were alter egos of T.O. IX and other defendants.  The construction contract contained an attorney fee provision.

The trial court bifurcated the case into three phases.  Phase one involved the breach of contract and quantum meruit causes of action.

In 2010, API prevailed against T.O. IX on phase one. In 2011, the trial court found Emaron, Fairland and RES were not alter egos.

In 2013, Emaron, Fairland and RES filed a motion for attorney fees. The trial court denied the motion, ruling it was untimely. They appealed. In 2014, we reversed and ruled the attorney fee motion was timely.

These three prevailing defendants filed a motion for costs and attorney fees. In the motion lead counsel Leonard Tavera said that because this litigation was "complex," he had to secure help from additional counsel. Counsel defended "sixteen defendants" in this case. Some of the defendants he represented did not prevail. In seeking fees for Emaron, Fairland and RES, the "fees were apportioned to [these] prevailing defendants based on when they were first named in one of the five complaints in the instant action." Tavera said for the time the attorneys spent jointly representing all 16 defendants, he reduced the attorney fee request for Emaron, Fairland and RES to only a tiny fraction of the total defense costs--"1/16th each."

Emaron, Fairland and RES sought a total attorney fee award of $613,767.43. API filed an opposition and objections.

The trial court awarded attorney fees in the amount of $390,000. It rejected API's claim that fees were not proper because "these moving defendants are alter egos" of other defendants. It accepted "the authenticity of the billing sheets submitted by [the] moving defendants."

DISCUSSION

*The Attorney Fee Award*

The three defendants prevailed on the alter ego issue and were entitled to attorney fees based on the attorney fee provision of the contract. (*Pueblo Radiology Medical Group, Inc. v. Gerlach* (2008) 163 Cal.App.4th 826, 829; see also *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877.) Attorney fees for a successful party "include compensation for all hours reasonably spent, including those necessary to establish and defend [an attorney] fee claim." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639.)

2

The trial court has substantial discretion in determining the size of an attorney fee award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133; *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 76.) "Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services provided in their courts." (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 821.) Consequently, awards of attorney fees will not be reversed unless "the appellate court is convinced the ruling is clearly wrong." (*Id*. at pp. 820-821.)

*Documentation*

API contends the award of fees to the three defendants must be substantially reduced because the motion for fees was not properly documented.

The motion for attorney fees was supported by the declarations of three attorneys--Leonard Tavera, Mark B. Chassman, and John D. Henrichs. The motion contained the extensive billing records for all counsel who performed services.

API claims that for some attorneys the motion includes their attorney time records without a declaration from the attorney who performed the services reflected in those records. It contends the trial court was consequently required to deny compensation for all the hours claimed by those lawyers because they were not supported by a proper declaration.

But all of the attorney time records API challenges were included in the declaration of attorney Tavera. Tavera is the lead counsel who has worked on this case for many years. He said his declaration was made on his "own personal knowledge." He declared that the "attorneys keep detailed, contemporaneous time records and bill clients to the nearest tenth of an hour." Tavera said, "All of my time as well as that of my associates and partners is reflected in the detailed billing records attached hereto." He said the time and billing records were "true and correct copies" of the actual invoices sent to his clients for "work performed in the instant action."

API suggests Tavera's statements about the time records must be rejected because he could not credibly make representations about the work of other lawyers. But as the defendants note, the trial court alone resolves credibility issues. (*In re Shelley J.*

3

(1998) 68 Cal.App.4th 322, 329.) Moreover, there are additional declarations in the record from Martin Barrett, the treasurer of codefendant D & S Homes, Inc. and Stephen Bock, the CEO of that company. They stated: 1) "All defendants were jointly liable" for the time and billing record invoices from the law firms representing the defendants; and 2) "[t]hese invoices *accurately reflect the amounts incurred by defendants* for legal services." (Italics added.) The trial court found those declarations showed the defendants' liability for their attorneys' services. Those time and billing record invoices show the attorneys performed a substantial amount of legal work and provide detailed documentation of their services and hours.

A better practice would have been for each attorney to file a separate declaration attached to their own time and billing records. But even if the defendants' procedure was flawed, that does not mean the trial court was required to deny all fees for the successful work of these lawyers. (*Cates v. Chiang*, *supra*, 213 Cal.App.4th at p. 821.)

In *Cates*, the Court of Appeal noted that there were flaws and deficiencies in an attorney fee motion. It said, "[I]t would have been preferable if the two attorneys had maintained contemporaneous records *and had filed declarations* in the fee litigation. However, *the flaws in the supporting evidence did not mean the court was required as a matter of law to award no fees* for the substantial work provided by these two attorneys." (*Cates v. Chiang*, *supra*, 213 Cal.App.4th at p. 821, italics added.) It ruled that in lieu of declarations and billing records from the two counsel who performed the services, another lawyer could "reconstruct" their hours for the attorney fee claim. (*Id.* at pp. 821-822.) Consequently, a fee motion that is procedurally flawed or incomplete does not deprive the trial court of its discretion to determine a reasonable attorney fee. (*Id.* at p. 821; *East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742, 750; *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227; *California Interstate Tel. Co. v. Prescott* (1964) 228 Cal.App.2d 408, 411.)

4

*Abuse of Discretion*

API suggests the trial court abused its discretion by not making a substantial reduction in fees for the attorneys who submitted their billing records without their declarations. It notes that had the court eliminated all of the fees for those lawyers, the defendants' request for fees would have been reduced by the following amounts: "Emaron: $86,517.85, Fairland: $103,260.08, [RES]: $103,260.08."

The defendants respond that the trial court did make a large reduction. They note that they sought "$613,767.43 for fees," but the court reduced that to $390,000.00. They claim this downward adjustment shows the court took into consideration any alleged deficiency in the documentation. The court said it considered API's objections to the billing statements in making its determination on the amount of attorney fees. The size of the reduction in fees because of documentation deficiencies is a matter within the trial court's sound discretion. (*Cates v. Chiang*, *supra*, 213 Cal.App.4th at p. 821.)

The trial court also had the record of the years of extensive litigation in this case. It was consequently in the best position to consider that record in evaluating the amount of attorney fees. (*Cates v. Chiang*, *supra*, 213 Cal.App.4th at p. 821; *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 ["The trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case"].) "That some proceedings occurred prior to the assignment of the action to the trial court, does not prevent the court from estimating fees based on the record." (*East West Bank v. Rio School Dist.*, *supra*, 235 Cal.App.4th at p. 750; see also *Fed-Mart Corp. v. Pell Enterprises, Inc.*, *supra*, 111 Cal.App.3d at p. 227 ["An award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence"]; *California Interstate Tel. Co. v. Prescott*, *supra*, 228 Cal.App.2d at p. 411 [the court may set a fee based on its evaluation of the litigation history in the record].)

Moreover, a party who challenges the attorney fee award must also make a showing "to demonstrate that any amount sought was unreasonable." (*Lin v. Jeng* (2012)

5

203 Cal.App.4th 1008, 1026.)  API has not cited evidence showing that the attorneys' hours, services, or rates were excessive or unreasonable.  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 562.)

*Unity of Interest*

API contends the three defendants had a "unity of interest" in a joint defense and they "filed joint answers, motions and responses."  It suggests the trial court erred by not denying their defense costs and litigation expenses for counsels' joint representation of the prevailing and losing defendants under the unity of interest doctrine. We disagree.

"One defendant who prevails may recover costs even though the plaintiff recovers against another defendant."  (7 Witkin, California Procedure (5th ed. 2008) Judgment, § 94, p. 633; see also *Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254, 1278.)

Under the unity of interest doctrine, "'[i]n those instances in which several defendants are united in interest and/or join in making the same defenses in the same answer,'" fees and costs incurred are subject to potential reduction.  (*Slavin v. Fink* (1994) 25 Cal.App.4th 722, 726.)  But whether to make "'the allowance or disallowance of an award to prevailing defendants lies within the sound discretion of the court.'"  (*Ibid.*) Most courts apply the unity of interest doctrine.  One court, however, has concluded that where the trial court finds the defendants are the prevailing parties, "the unity of interest principle permitting discretionary denial of costs to a prevailing party defendant who jointly litigated the case with a nonprevailing defendant . . . cannot be applied . . . ." (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 442.)  But under either approach the result does not change.

Here the trial court could reasonably infer counsel for the defendants had initially reduced the fees for Emaron, Fairland and RES to take into account their joint representation of other defendants.  (*In re Tobacco Cases 1* (2013) 216 Cal.App.4th 570, 586-587 [voluntary percentage reduction in fees by counsel may eliminate the need for the court to make an apportionment].)  Defense counsel noted that the fees and costs

6

sought for the three defendants were only a small fraction of the total defense costs when they were jointly representing all 16 defendants in this case. API has not shown counsels' reduction in fees and costs was unreasonable. There were some issues common to all defendants. But the trial court has discretion to decline to apportion fees where the issues litigated by the prevailing defendants are closely intertwined. (*Webber v. Inland Empire Investments, Inc.* (1999) 74 Cal.App.4th 884, 920.) API has not shown why the trial court could not also reasonably infer litigation on the alter ego status involved some unique facts for each defendant. Moreover, a substantial portion of the fee motion involved compensation for attorney time on the last appeal in this case. This involved attorney services exclusively for these three defendants.

API contends the trial court did not evaluate the unity of interest factors. But unless otherwise shown, we presume that the "trial court considered the relevant factors" (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67), and that "the court's order is supported by the record" (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148). The court found "defendants at issue here incurred their own costs." It based this finding on declarations in the record. Substantial evidence supports that finding.

*Fairland's Standing*

API contends Fairland should not be entitled to collect attorney fees because its corporate status has been suspended for failure to pay taxes.

A corporation that has had its corporate powers suspended for failure to pay taxes may not pursue litigation. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1236-1237.) After it obtains "a certificate of revivor of its corporate status," it may continue litigation. (*Ibid.*) A revivor certificate will validate "'the procedural steps taken on behalf of the corporation while it was under suspension . . . .'" (*Id.* at p. 1237.)

In the respondents brief, counsel for the defendants states Fairland has paid its taxes and "has been reinstated and revived." But this is an evidentiary issue that must initially be decided by the trial court.

7

Several weeks after the trial court issued its attorney fee order, the court found there was a suspension of corporate status.  It stayed its previous order on attorney fees and costs for Fairland because it found "it is a suspended corporation."  API has not shown the court abused its discretion by making this order or any reason to modify it.

Disposition

The attorney fee and cost orders are affirmed.  Costs on appeal are awarded in favor of respondents Emaron and RES.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____

Law Offices of Ray B. Bowen, Jr., Ray B. Bowen, Jr. for Plaintiff and Appellant.

Semper Law Group, LLP, Leonard M. Tavera; Henrichs Law Firm, PC, John D. Henrichs for Defendants and Respondents.