Filed 5/5/15  Marriage of Reade and Roizman CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Marriage of VICTORIA READE and KEITH ROIZMAN. | B253362 |
| | (Los Angeles County Super. Ct. No. BD512241) |
| VICTORIA READE, Appellant, v. KEITH ROIZMAN, Respondent WENDY L. SHEINKOPF, Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Roberta L. Murawski for Appellant.

No appearance for Respondent.

Wendy L. Sheinkopf, in pro. per. for Respondent Sheinkopf.

Victoria Reade appeals an order requiring her to pay $73,000 in fees to respondent Wendy L. Sheinkopf, an attorney who represented Reade's ex-husband, Keith Roizman, during the parties' dissolution proceedings. Reade contends that the trial court abused its discretion by failing to consider whether Sheinkopf's assessed fees were reasonable and issuing an order that exceeded the bounds of reason. We disagree and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

**A.      *Underlying Dissolution Proceedings***

Reade and Roizman married on May 8, 2002. Reade initiated dissolution proceedings on September 11, 2009, a few weeks after she and Roizman were involved in a domestic violence incident that led her to obtain a restraining order against Roizman. The dissolution proceedings—which should have been relatively straightforward given the absence of children and significant or complex assets – quickly became bogged down by disputes over the restraining order, the marital home,[1] and the operations (and later attempted joinder) of iontherapeutics, Inc., a struggling start-up medical device business in which Reade and Roizman each held a 35 percent stake and an executive position. Sheinkopf, who had been representing Roizman from the beginning of the litigation as an associate at the Law Offices of Robert M. Cohen, substituted into the case as his sole counsel on April 23, 2010.

The court resolved the dispute over the restraining order in April 2010 when it denied Roizman's request to modify or terminate the order. Iontherapeutics'

---

[1]      Ownership of the couple's Hollywood Hills home was hotly contested even though the deed and mortgage were both in Reade's name. Roizman claimed that a friend of his, Dr. R. James Klingenstein, purchased the home for Roizman's benefit and owned the home until Reade tricked him into signing title over to her. Reade maintained that she legitimately purchased the home from Klingenstein using her separate property. Klingenstein intervened in the dissolution proceedings and filed a verified complaint alleging that Reade defrauded him (and seeking to quiet title as to Roizman). Reade subsequently filed a cross-complaint against Klingenstein and Roizman, and Roizman filed a cross-complaint against Reade. The home eventually fell into foreclosure. It is unclear from the record what became of the home and the claims regarding it.

2

participation in and relevance to the dissolution proceedings likewise substantially diminished when the company declared bankruptcy on October 12, 2010. The marital home remained a source of controversy throughout the proceedings, however.

In late August 2010, Roizman served Reade with a demand to inspect the marital home (from which he had been banned by the restraining order since August 2009). Over the next several weeks, the parties exchanged a flurry of correspondence regarding the inspection and Roizman's simultaneous demand for a continued deposition of Reade. Their exchanges became particularly contentious after Sheinkopf obtained first a temporary and later a permanent restraining order against Reade following an alleged battery incident.[2] Ultimately, in October 2010, Roizman filed a voluminous motion to compel the inspection and deposition.

The court orally granted the motion to compel on November 29, 2010 and ordered the parties to conduct the inspection no later than February 28, 2011. Despite the court's order, the inspection continued to generate controversy and heavy litigation during the next several months. The parties exchanged correspondence disputing the proper timing and duration of the inspection as well as other details. On February 24, 2011, Roizman filed an ex parte request seeking enforcement of the court's November 29, 2010 orders. Roizman also sought monetary sanctions and fees. It is unclear from the record what happened at the hearing on Roizman's ex parte motion. It appears, however, that Reade did not appear for the scheduled inspection, and that the parties were unable to reach an agreement regarding the deposition. The parties continued their litigation of discovery issues throughout the spring and summer. The court accurately observed in November 2010 that the case was "being litigated as though it were a multimillion dollar estate."

Eventually, on August 4, 2011, the court issued a six-page ruling spelling out the precise manner in which the parties were to proceed with the deposition and inspection.

---

[2] Sheinkopf claimed that Reade hit her in the back at an arbitration involving Reade, iontherapeutics, and iontherapeutics' former counsel. Reade "vociferously denie[d]" touching Sheinkopf and maintained that both the temporary and permanent restraining orders were entered without proper notice to her.

3

The court declined to impose sanctions against either side, noting the "significant confusion" regarding the inspection. With regard to fees, the court stated that it "can and will make attorney fee awards when it is clear to the court what the assets in this dissolution are and what they are worth. . . . Both parties are convincing in their representation that they simply do not have any assets at this time to pay their own fees, let alone the fees for the other party."

Roizman discharged Sheinkopf shortly after the court's August 4, 2011 discovery ruling.

## B.      The Borson *Motion and Related Proceedings*

### 1.      The Borson *Motion and Accompanying Documents*

On August 9, 2011, Sheinkopf filed a motion for attorney's fees pursuant to *In re Marriage of Borson* (1974) 37 Cal.App.3d 632 (*Borson*), which permits a discharged attorney, with the express or implied consent of his or her former client, to seek fees from the opposing party in dissolution proceedings on the former client's behalf. In the declaration attached to her motion, Sheinkopf averred that Roizman discharged her on August 7, 2011 after he incurred $135,450 in legal fees and $3,096.79 in costs, $90,157.38[3] of which remained unpaid and all of which she characterized as "reasonable and necessary pursuant to the holding in *In Re Marriage of Keech* (1999) 75 Cal.App.4th 860." Sheinkopf averred that Roizman was unable to pay the fees himself, as he "is legally blind, and this severe disability prevents him from being gainfully employed."[4] Notwithstanding the court's recent observation that neither party appeared able to pay fees, Sheinkopf contended that Reade, whom she described as "a healthy woman of 50," was in a better position than Roizman to pay Sheinkopf's outstanding fees. According to Sheinkopf's declaration, Reade held degrees that rendered her employable (a B.S. in nursing and an M.B.A.), continued to earn at least $4,000 per month in rental income

---

[3]      Sheinkopf later revised this number upward to $91,307.87.

[4]      No party to this case appears to have questioned this assumption, despite Roizman's recent gainful employment as an executive at iontherapeutics.

4

from the marital home, had been employed by iontherapeutics during the 14 months of the proceedings in which it remained a going concern, and "evidently has the financial resources to be able to have attorneys from two separate firms represent her at the same time in this action alone." Sheinkopf further asserted that "the vast majority of the fees and costs incurred by [Roizman] during my representation were occasioned and required due to the conduct of [Reade]," particularly in connection with the protracted discovery disputes on which Roizman ultimately prevailed.

Sheinkopf provided the court with 46 pages of redacted invoices. All of Sheinkopf's time was billed at her "discounted" rate of $350 per hour, including the time she spent obtaining the restraining order against Reade. The invoices also reflected Sheinkopf's litigation costs, including an $88 parking ticket and a $262.90 tow charge incurred when she appeared in court.

Sheinkopf also provided income and expense declarations filed by Reade and Roizman. Both declarations painted relatively bleak pictures of the parties' finances. Reade reported monthly expenses in excess of $12,000, monthly income of $4,000, and averred that she had been "deplet[ing] separate savings" and obtaining personal loans to pay her attorneys, to whom she still owed $49,000. Roizman reported monthly expenses of approximately $12,000 and claimed no income aside from his $1,174 monthly Social Security disability payment and $94 in other public assistance. He also reported using personal loans to pay his attorneys.

Reade opposed Sheinkopf's motion, claiming that Roizman had sufficient funds to pay his own fees and "caused this matter to be unnecessarily delayed and his attorney has caused unnecessary, protracted litigation." The record does not reflect that she made any additional written argument about the reasonableness of Sheinkopf's fees, invoices, or the charges contained therein.

### 2.    *The Initial Hearing and Ruling*

The court, presided over by Judge Juhas, heard the *Borson* motion on September 12, 2011. Roizman, who was "technically" represented by new counsel at that point, did

5

not attend, and neither did his new counsel. (Roizman later claimed he did not receive notice of the hearing, and attempted to demonstrate that he did not consent to the motion. Reade's counsel attended, and she and Sheinkopf each claimed that the other's client bore responsibility for the heavily litigated nature of the proceedings. Sheinkopf requested an expeditious ruling, as she wanted to ensure "that somehow my law firm's rights are preserved." Counsel for Reade requested that the motion be reserved until the time of trial. Judge Juhas acknowledged both parties' positions, stating, "If I don't grant the Borson motion, it will be reserved until time of trial. Absolutely." He took the motion under submission and stated that he would "look at the papers and get something out as quickly as I can."

One week later, on September 19, 2011, Judge Juhas issued a minute order stating in its entirety: "This is the court's ruling in the submitted matter of Ms. Wendy Sheinkopf's Borson motion. The court grants the motion, but reserves over any payment of fees to Ms. Sheinkopf until the matter is finally determined. The court reserves over both need and ability to pay fees as well as any Family Code section 271 fees. Ms. Sheinkopf is to be advised of any trial or settlement conference in this matter so that she can participate, to the appropriate extent, concerning her attorney fee bill. [¶] Ms. Sheinkopf is to give notice of this ruling."

### 3. Reade's Bankruptcy

On October 20, 2011, Reade filed for bankruptcy. Reade listed Sheinkopf as "Creditor #26" on her Schedule F – Creditors Holding Unsecured Nonpriority Claims, indicating that Sheinkopf held a contingent, unliquidated, and disputed claim of $143,909.37. (That figure, approximately $50,000 more than the $91,307.87 outstanding balance actually billed to Roizman, reflected the amount Sheinkopf claimed she could have charged Roizman if she had assessed her typical fee of $425 per hour and had billed him for every second she spent on the case.) In another filing, Reade averred that she had been self-employed as a healthcare consultant for the preceding six months and during that time had earned $10,000 per month. She also noted, however, that her consultancy

6

agreement ended on October 31, 2011 and she had not secured a new position. Reade represented that her monthly disposable income was negative $728.67, and projected her 60-month disposable income at negative $43,720.20.

The bankruptcy court ordered Reade's debts discharged on August 21, 2012. The bankruptcy court did not discharge "[d]ebts that are domestic support obligations."

### 4. *Sheinkopf's Attempts to Obtain Payment and Related Proceedings*

In September 2012, after being advised by Reade's counsel that the dissolution proceedings were nearing a resolution, Sheinkopf filed a request for order awarding payment pursuant to her *Borson* motion. Sheinkopf asserted that a *Borson* award was in the nature of a domestic support obligation, such that it was not discharged in Reade's bankruptcy, and requested that the court order Reade and/or intervenor Klingenstein to pay her fees "forthwith."

Reade opposed Sheinkopf's request. She argued for the first time that Sheinkopf's bills were "so heavily redacted, it cannot be reasonably determined what work was performed by Ms. Sheinkopf, or what she actually accomplished, other than it is clear that none of it related to support for Mr. Roizman . . . ." Reade further argued that Sheinkopf failed to demonstrate that Roizman could not pay the fees, "or is not in better financial position to pay the fees than [Reade], who just emerged from bankruptcy." Reade also contended that she lacked the ability to pay the fees. In support of her latter contention, Reade furnished a schedule of assets and debts dated September 12, 2012 in which she averred that she already had post-bankruptcy debts totaling $72,000. Reade also provided an updated income and expense declaration, in which she stated that she earned $6,000 per month for working 8-10 hours per week as a healthcare consultant. Her declaration, which also was dated September 12, 2012, indicated that she had $780 in the bank, incurred monthly expenses of approximately $10,250, and owed her attorneys $68,000. Roizman also opposed Sheinkopf's request for order.

The court, now presided over by Judge Court, denied Sheinkopf's request for payment from Klingenstein without prejudice "because he wasn't a named party in the

original motion." The court stayed Sheinkopf's request for payment from Reade because Sheinkopf had a claim pending against Reade's bankruptcy estate in bankruptcy court. The court also granted Reade's outstanding motion to bifurcate status, terminated the marriage, and set any remaining issues for trial on February 11, 2013. Sheinkopf filed a second request for payment of her fees and set that motion for hearing at the scheduled trial.

In December 2012, without notifying Sheinkopf as required by the court's September 19, 2011 order, Reade and Roizman settled their remaining issues and prepared a judgment for the court's signature. Under the terms of the proposed settlement judgment, Reade and Roizman each agreed to pay their own attorneys' fees.

After she was apprised of the parties' settlement in January 2013, Sheinkopf filed an ex parte motion requesting that judgment be stayed or vacated until her *Borson* claims were fully resolved. The court granted the motion over Reade's and Roizman's objections, staying entry of the judgment.

The court issued a ruling on Sheinkopf's second request for payment on February 22, 2013. In that ruling, the court again denied Sheinkopf's request to recover fees from Klingenstein. The court also denied Sheinkopf's request that Reade pay her fees, finding that Sheinkopf "failed to show that the bankruptcy court determined that her claim was a domestic support obligation" not discharged in Reade's bankruptcy. The court predicated this finding on a January 15, 2013 ruling from the bankruptcy court disallowing Sheinkopf's claim against the bankruptcy estate.

On February 27, 2013, Sheinkopf filed a motion for new trial pursuant to Code of Civil Procedure sections 656-662. As relevant here, Sheinkopf argued that the court's ruling precluding her recovery against Reade rested on incorrect and incomplete facts because the bankruptcy court ruling on which it was based had been entered without proper notice to her. The bankruptcy trustee ultimately agreed with Sheinkopf on that point and agreed to refile its motion so she would be afforded an opportunity to respond.

8

Reade opposed Sheinkopf's motion. Roizman joined Reade's opposition in its entirety and further argued that he never consented to the *Borson* motion.

The court issued a tentative ruling on April 9, 2013. In that ruling, the court proposed denying Sheinkopf's motion as it pertained to recovery against Klingenstein. The court proposed conditionally granting the motion for new trial as it pertained to Reade. The court proposed setting a new trial "for a date after . . . the bankruptcy court's ruling. If the bankruptcy court determines that [Sheinkopf's] claim is not a domestic support obligation and therefore, has been properly discharged, the new trial date will be taken off calendar. . . . If the bankruptcy court determines that [Sheinkopf's] claim is a domestic support obligation and thus, improperly discharged, [Sheinkopf] will have shown newly discovered evidence for new trial under Code of Civil Procedure 657(4)."

The court adopted its tentative ruling after hearing extensive oral argument on April 24, 2013. The court set the conditional date of new trial for June 26, 2013.

On June 12, 2013, the bankruptcy court "determined that (a) [Sheinkopf's claim against the bankruptcy estate] is a contingent and unliquidated claim that arose prior to the petition date; (b) the amount of [Sheinkopf's claim] will not be determined until the claimant's "Borson" motion has been adjudicated by the Family Law Court; and (c) the evidentiary record does not otherwise support a disallowance of [Sheinkopf's claim] under § 502(b)(1) at this time." The bankruptcy court further ruled that the bankruptcy trustee could reassert its objection to Sheinkopf's claim "after the state court rules on the *Borson* motion."

With that ruling in hand, the parties returned to family law court as scheduled on June 26. Reade did not personally appear but filed a declaration attesting to her "great financial hardship," a significant portion of which she attributed to opposing Sheinkopf's continuous pursuit of fees in both the bankruptcy and family law courts. Neither she nor Roizman provided an updated income and expense declaration, however. The court concluded that without those declarations, it lacked "the information that it needs in order to make a proper inquiry" into the parties' financial need and ability to pay fees. The

9

court therefore continued the matter to October 16, 2013 and ordered both parties "to file and serve updated Income and Expense Declaration by September 16, 2013."

Reade timely filed an updated declaration dated September 16, 2013. She indicated that she earned approximately $1,450 per month as a healthcare consultant and temporary contractor working 10-20 hours per week. She also stated that she had been receiving $200 per month in food stamps since May 2013 and had only $237.67 in the bank. Reade reported owing more than $100,000 to her attorneys, but also indicated that she voluntarily had paid her current attorney $2,000 that month. Reade also filed a schedule of assets and debts, recent bank statements, and her 2012 tax return. One of the bank statements indicated that her "combined balance in linked accounts, which may include [d]eposit accounts or qualifying credit accounts, including a credit card" was $13,299.65.

Sheinkopf timely filed a supplemental brief. She argued that the court needed to decide "basically, two" issues: "(1) What is the amount of the Borson Award: (a) the sum of $143,909.37: the total sum of unpaid billed and unbilled fees and costs incurred by Roizman through his use of Sheinkopf's legal services, as claimed by Reade in her bankruptcy filing papers; or (b) the sum of $91,307.87: the total sum of unpaid billed fees and costs incurred by Roizman through his use of Sheinkopf's legal services; and (2) Between Reade and Roizman, which party has an ability to pay Sheinkopf's unpaid legal fees and costs: if Roizman completely lacks the ability to pay, does Reade have such ability and to what extent?" Sheinkopf further asserted that the reasonableness of the fees she requested was not before the court because "that issue was not reserved and the determination of reasonableness was subsumed in the Order of this Court on September 19, 2011." She also argued that "Roizman is presumed . . . to lack the ability to pay fees and costs of the Borson Award, and to have the need for Reade to be ordered to pay those fees and costs," because he "has consistently declared in this matter that he is legally blind . . . and he has no income other than his Social Security disability income of less than $2,000 per month."

Reade responded that she lacked the ability to pay Sheinkopf's fees. She also challenged Sheinkopf's "presumption" regarding Roizman's financial situation, averring, "[i]t is hard to imagine that Mr. Roizman, who has not had to file for bankruptcy, and as far as we know is not on food stamps, can be any worse off financially than Petitioner."

In reply, Sheinkopf pointed to several discrepancies in Reade's financial filings, including the $13,299.65 in "linked accounts," the recent and voluntary $2,000 payment to her attorney, and an entry in her bank statement reflecting a $6,400 wire transfer from a Barclay's bank account that never had been disclosed to the court. Roizman emphasized these and other discrepancies in his own untimely pro. per. filings, which for the first time supported Sheinkopf.

At the October 16, 2013 hearing, the court granted Reade's motion to strike Roizman's untimely income and expense declaration and ordered that the hearing "go forward today based on the evidence we have before us." The court allowed each interested party – Reade, Sheinkopf, and Roizman, who appeared in pro. per. by telephone – to make arguments. During his argument, Roizman stated that he was blind, earned $1,339 per month in Social Security disability payments, and had no other income.

The court issued its ruling on October 23, 2013. The court began by noting that it had not reserved jurisdiction over the reasonableness of the $91,307.87 Sheinkopf had billed during her tenure as Roizman's counsel. Accordingly, it proceeded to a consideration of whether there was a disparity in access to funds to retain counsel and ability to pay. (See Fam. Code, § 2030, subd. (b)(2).)[5] The court found that the parties' incomes were about equal if their income and expense declarations were taken as true: Reade claimed a monthly income of $1,450 and Roizman claimed $1,288.[6] The court

---

[5] All further statutory references are to the Family Code unless otherwise indicated.

[6] The court struck Roizman's most recent income and expense declaration, so it is unclear to which declaration it was referring or how it ultimately arrived at its conclusion

11

found, however, that Reade's declaration "does not accurately reflect her true financial situation." Concluding that it was "not credible" for Reade's income to have declined from $6,000 per month in September 2012 to $1,450 in September 2013 "for working up to 10 hours more per week in her own business," the court attributed to Reade a monthly income equal to "at least" her reported monthly expenses of $10,400. Based on this finding, the court determined that a disparity existed: Reade took home 80 percent of the former couple's net disposable income after payment of taxes. The court also noted that Reade "has at least $27,000 in her bankruptcy estate." "Taking into consideration [Reade's] reasonable expenses including her reasonable litigation costs," the court further determined that she possessed "sufficient resources to make a contribution to [Roizman's] fees" even though she lacked the ability to pay the entire amount. The court found that Reade should pay 80 percent of the billed fees, or $73,000.

The court next considered "whether its apportionment of the overall fees and costs is "just and reasonable:" [*sic*] whether its award is sufficient, to the extent practical, to enable each party to present their case adequately, and how to apportion the fees and costs based on the parties [*sic*] relative circumstances applying the relevant factors listed in Family Code § 4320." (See §§ 2032, subds. (a) & (b), 4320.) The court concluded, "[b]ased on this analysis," which incorporated a variety of the factors enumerated in section 4320, that Roizman "needs the fee award within the meaning of the Family Code" and that the award of $73,000 "is just and reasonable and is appropriate." Finding that monthly installment payments would not place an unreasonable burden on Reade, the court ordered her to pay $1,500 per month to Sheinkopf, beginning as soon as the bankruptcy court adjudicated and disbursed Sheinkopf's still-pending claim against Reade's bankruptcy estate.

---

that Roizman's income was $1,288 per month. Reade has not challenged this finding on appeal.

12

Reade timely appealed. The order is an appealable one over which we have jurisdiction. (See *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368; *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119.)

**DISCUSSION**

**I.      Legal Framework**

A *Borson* motion rests upon section 2030. (See *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356 & fn. 8; *In re Marriage of Read* (2002) 97 Cal.App.4th 476, 480; *Borson*, *supra*, 37 Cal.App.3d at p. 634.) Section 2030 permits the court to order one party to a dissolution to pay the other's attorney fees and costs and "reflects the public policy of providing, """"at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses and their ability to obtain effective legal representation.'" [Citation.]' [Citation.]" (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 164 (*Sharples*).) "The purpose 'is *not* the redistribution of money from the greater income party to the lesser income party,' but rather '*parity*: a fair hearing with two sides equally represented.' [Citation.]" (*Ibid.*) Accordingly, section 2030 by its terms limits awards to "whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding" (§ 2030, subd. (a)(1)) and expressly requires the court to "make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel and whether one party is able to pay for legal representation of both parties" (§ 2030, subd. (a)(2)).

The trial court may make an award under section 2030 only "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) In making its determination, the court "shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).)

13

Section 4320 sets forth a nonexhaustive list of circumstances for the court to consider when ordering spousal support, including the ability of the supporting party to pay, the needs of the recipient party, the obligations and assets of each party, the ability of the supported party to engage in gainful employment, the age and health of the parties, the balance of hardships to the parties, and any other factors the court deems just and equitable. (§ 4320, subds. (c), (d), (e), (g), (h), (k) and (n).)

Decisional law outlines additional factors a court should consider when setting the amount of a need-based award, including "the nature of the litigation; its difficulty; the amount in controversy; the skill required and employed in handling the litigation; the attention given; the success of the attorney's efforts; the attorney's learning and experience in the particular type of work demanded; the intricacies and importance of the litigation; the labor and the necessity for skilled legal training and ability in trying the cause; and the time consumed." (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 827, fn. 30; *In re Marriage of Keech*, *supra*, 75 Cal.App.4th at p. 870 (*Keech*); *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296.) Thus, the financial resources of the parties is but one factor the court must consider when determining whether an award is just and reasonable. (§ 2032, subd. (b).)

## II.     Standard of Review

Family courts are vested with considerable discretion in crafting an award of attorney's fees. (*Sharples*, *supra*, 223 Cal.App.4th at p. 165.) We review such awards only for an abuse of this discretion. (See *id.*; see also *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 829 (*Rosen*); *Keech*, *supra*, 75 Cal.App.4th at p. 866.) Under this deferential standard, we must affirm unless no judge reasonably could make the challenged order. (*Rosen*, *supra*, 105 Cal.App.4th at p. 829.) Put another way, "'the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.'" (*Keech*, *supra*, 75 Cal.App.4th at p. 866.) "However, the court's 'decision must reflect an exercise of discretion and a consideration of the appropriate factors as set forth in code

14

sections 2030 and 2032.' [Citations.]" (*Sharples, supra*, 223 Cal.App.4th at p. 165.) Additionally, "[t]he trial court's failure to exercise discretion is itself an abuse of discretion." (*Ibid.*) Reade, the party challenging the order, bears the burden of demonstrating an abuse of discretion (*In re Marriage of Lopez* (1974) 38 Cal.App.3d, 93, 114, disapproved on other grounds by *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 452-453); error is never presumed on appeal (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822).

## III. Analysis

### A. *The trial court did not abuse its discretion by failing to make an express reasonableness finding*

Reade first contends that the trial court abused its discretion because neither Judge Juhas, who made the initial ruling granting the *Borson* motion, nor Judge Court, who made all subsequent rulings regarding the award of fees, "reviewed the reasonableness of Sheinkopf's fees." She argues that without an explicit assessment of reasonableness "on the record, any decision is an abuse of discretion," for "'[t]he exercise of sound discretion by the trial court in the matter of attorney's fees also includes judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case' [Citation.]" (*In re Marriage of Huntington* (1992) 10 Cal.App.4th 1513, 1524; see also *Keech, supra*, 75 Cal.App.4th at p. 870 ["It was an abuse of discretion to order husband to pay wife's attorney fees without making any inquiry into the reasonableness of those fees."].) Although Reade is correct that neither Judge Juhas nor Judge Court expressly addressed the reasonableness of Sheinkopf's fees, we disagree with her conclusion that the absence of express findings necessarily constitutes an abuse of discretion.

Even where a court has statutory duties to state "in writing or on the record" its reasons for making or modifying an award, as it does in the context of child support (see § 4056, subd. (a); § 4072, subd. (a)(1)), the court's failure to expressly state its reasons does not lead to automatic reversal. To the contrary, "we are enjoined by our

15

Constitution from imposing a reversible-per-se rule here." (*In re Marriage of Carlsen* (1996) 50 Cal.App.4th 212, 218 [child support hardship exemption].) "[T]he Legislature has not precluded us here from implying findings," and we do not "have the constitutional due process concerns presented by the imposition of sanctions [citation] or the need to protect against 'corrupt' judicial interference with the criminal process [Citation.]." (*Ibid.*) The failure to make required findings may constitute reversible error, but only where "the missing information is not otherwise discernible from the record." (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183.) Put another way, "the failure to make a material finding on an issue supported by the pleadings and substantial evidence is harmless where the missing finding may reasonably be found to be implicit in other findings," or "when, under the facts of the case, the finding would necessarily have been adverse to the appellant." (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450.)

Here, the missing finding – that Sheinkopf's bills were reasonable – may reasonably be found to be implicit in Judge Juhas's granting of the *Borson* motion and reservation only of "need and ability to pay fees." When he made his ruling, Judge Juhas had before him copies of Sheinkopf's bills, her declaration averring that much of her work was occasioned by Reade's litigation conduct, and his own experience with the case (see *In re Marriage of Cueva*, *supra*, 86 Cal.App.3d at p. 300), which began at roughly the same time as Sheinkopf became Roizman's sole counsel. He notably did *not* have before him the arguments Reade's counsel now makes, that the bills contained improper or excessive charges, time expenditures, or redactions. Moreover, Judge Juhas told the parties he would "look at the papers and get something out as quickly as I can," which strongly suggests that he was aware of and considered the substantial submissions proffered by counsel before issuing his ruling a full week after the hearing on the matter. These facts distinguish this case from *Keech*, in which the court "was not apprised of the nature and extent of the services rendered, so it could not determine their reasonable value based upon its own expertise." (*Keech*, *supra*, 75 Cal.App.4th at p. 870), and *In re*

16

*Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1314 (*Tharp*), in which the court "affirmatively refus[ed] and fail[ed] to exercise" its discretion by declining "'to ferret out and determine, based on the billing statements of [wife's] attorney, which fees were fair and unfair.'"

Although the court allowed some potentially questionable "costs" contained in the 46 pages of invoices, such as Sheinkopf's parking ticket and towing charge, we note that Reade failed to call these or any other line items to the court's attention at the time the motion was heard. (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1496 [refusing to consider challenge to reasonableness of attorney's fees imposed as sanctions because husband failed to timely object].) We are not persuaded that the court's failure to mention the three purportedly "questionable charges" Reade emphasizes in her brief constitutes an abdication of its duties akin to the trial court's in *Tharp*. Unlike the court in *Tharp*, which refused to review the "'reams of bills'" counsel filed (*Tharp*, *supra*, 188 Cal.App.4th at p. 1314), Judge Juhas said he would "look at the papers" and took the matter under consideration for a full week before ruling. Additionally, nothing in *Tharp* or any of her other cited case law supports Reade's position that she can establish that the trial court failed to review a piece of evidence simply by pointing to an error in that evidence or a belated assertion by Roizman that some unspecified portion of Sheinkopf's bills pertained to issues outside the divorce case. Likewise, it does not follow from Sheinkopf's attempts to seek payment from Klingenstein, or her comment that Reade may not be "obliged to make such a payment," that Judge Juhas did not consider reasonableness or did not deem "all or substantially all" of Sheinkopf's requested fees reasonable. Indeed, had Judge Juhas not implicitly ruled on reasonableness, his ruling granting the *Borson* motion while simultaneously reserving jurisdiction over other requisite findings on need and ability to pay would have been virtually meaningless. (Cf. *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1273 ["[T]he granting of the injunction itself necessarily implies that the trial court found that Mullvain knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed or harassed

17

Ensworth, and that Ensworth actually suffered substantial emotional distress. No further express findings are required."].)

**B.      *The trial court did not incorrectly decide it lacked jurisdiction to review the reasonableness of the bills***

Reade next contends that Judge Court's final order was "on its face, an abuse of discretion" because it evinces a "mistaken" belief that the court "had no ability to review the reasonableness of Sheinkopf's bills." She argues that the court misunderstood the scope of its discretion and therefore remand is required so that the court may "exercise *informed* discretion with awareness of the full scope of its discretion and applicable law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16.) We are not persuaded.

Judge Court's order recognized that the reasonableness of Sheinkopf's billed fees of $91,307.87 was a matter relevant to a fee award under section 2030 but did not comment further because Judge Juhas had granted the *Borson* motion more than two years ago and "did not reserve jurisdiction over the reasonableness of these fees." While it is true that "[n]o single fees and costs order is an 'all or nothing' proposition[,]" and that "[n]eed-based awards may be *augmented*  or *modified* as necessary during the entire pendency of the case, consistent with the parties' 'relative circumstances'" (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) ¶ 14:7, p. 14-3 [emphases in original]), Reade has not pointed to any authority suggesting that a court *must* reconsider its previous rulings to avoid abusing its discretion when awarding fees under section 2030. Nor has she pointed to any authority that a party may withhold its objections to an order for more than a year and then expect the court to disturb what it clearly intended to be a partially dispositive determination.

Moreover, Judge Court took care to make all three of the findings required by the plain language of section 2030. She expressly concluded that the "element" of "disparity in access to retain counsel and ability to pay . . . . [h]as been met," and further found that Reade "has sufficient resources to make a contribution to [Roizman's] fees," and that "the award in this order is just and reasonable and is appropriate." On the record before

us, we are not convinced that Judge Court abused her discretion in declining to more fully explicate the reasonableness of Sheinkopf's bills.

### C. The court's award did not exceed the bounds of reason

Reade's final argument is that no reasonable court could conclude that her changed income was not credible and that she could afford to pay $73,000 in attorney's fees for her ex-spouse. She contends that the court ignored undisputed evidence of her financial hardship, such as her tax returns and bank statements, in favor of "the muddy allegations of Keith [Roizman] and Sheinkopf, unsupported by facts, that [she] was not credible, and of dubious character," and improperly "assumed that the approximately $27,000 in her bankruptcy estate was Victoria's money" and "factored" it in when assessing Reade's ability to access funds and pay fees. We find no abuse of discretion.

Judge Court, whose familiarity with the record is apparent on the face of her ruling, found that Reade's reported decline in monthly income during the pendency of the dissolution was not credible. Thus, instead of relying upon Reade's reported income of $1,450 per month, the court considered her earning capacity and the expenses reported on her income and expense declaration when concluding that she had access to "at least $10,400 per month." The court was entitled to consider Reade's earning capacity instead of her reported income, particularly in light of its finding that Reade was not credible. (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 232; *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769.) To the extent Reade challenges the latter finding, "[w]e do not judge credibility on appeal." (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175). It is of no moment that the court rested its credibility assessment primarily on declarations. "'[T]he applicable standards of appellate review of a judgment based on affidavits or declarations are the same as for a judgment following oral testimony.'" (*Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189.)

Reade objects that the trial court "ignored" some of the evidence she proffered, including a notation on her income and expense declaration that she had received loans from family and friends, but the court as fact-finder was entitled to weigh the evidence as

it saw fit, and Reade's notation regarding the personal loans did not indicate that she was using those funds to pay her current monthly expenses.  Reade also claims that the court uncritically accepted Roizman's and Sheinkopf's unsubstantiated attacks on her credibility, but the court appears to have independently arrived at the conclusion that Reade's income statements were not credible; Sheinkopf argued only that Reade "does not tell the truth about what she has paid her attorney" or "how much she has in liquid assets," and Roizman also focused on other alleged untruths and inconsistencies in Reade's filings.  We do not condone the ad hominem nature of either Sheinkopf's or Roizman's arguments, but it does not appear that the court was misled by them.

Reade further challenges the court's purported assumption that the $27,000 comprising her bankruptcy estate "were sitting in a savings account in the bank next door."  We do not read the court's order that way.  Judge Court did mention the bankruptcy estate when discussing Reade's access to funds, but also acknowledged in more nuanced fashion that some portion of that estate might be used to pay off the claim if the bankruptcy court so adjudicated, such that Reade would need only to pay "any remaining shortfall at the rate of $1,500 per month until paid in full."  We cannot conclude from this statement that Judge Court improperly "factored this money into Victoria's ability to pay and access to funds."  Judge Court also stated that she considered "the respective obligations and assets of the parties, the balance of the hardships to the parties, the earning capacity of both parties, and the age and health of the parties."  Reade essentially invites us to reevaluate those factors, but "[t]he discretion belongs to the trial court, and not to us."  (*In re Marriage of Stallworth* (1987) 192 Cal.App.3d 742, 758 (conc. & dis. opn. of Haning, J.).)  We are not unsympathetic to Reade's contentions regarding her financial situation, but we cannot conclude that the court abused its discretion or exceeded the bounds of reason in ordering the award it did.

**DISPOSITION**

The judgment is affirmed. In the interests of justice, the parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.